675 A.2d 1059

**COMMERCIAL UNION INSURANCE COMPANY,**

v.

**HARLEYSVILLE MUTUAL INSURANCE COMPANY, et al.**

**No. 1339, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

May 7, 1996.

**46**

S. Woods Bennett (Theodore B. Cornblatt, Smith, Somerville & Case, L.L.C., Baltimore, Donald P. Maiberger and Anderson & Quinn, Rockville, on the brief), for Appellant.

Robert L. Humphreys, Sr. and Timothy E. McLaughlin (Herwig & Humphreys, L.L.P., on the brief), Baltimore, for appellees DDB and Harleysville.

Robert L. Humphreys, Sr. and Timothy E. McLaughlin (J. Joseph Curran, Jr., Atty. Gen. and James W. Himes, Asst. Atty. Gen., on the brief), Towson, for appellee, Uninsured Employers' Fund.

Argued before BISHOP, CATHELL and HARRELL, JJ.

HARRELL, Judge.

This appeal requires us to determine the effect of a workers' compensation insurance policy carried by a Virginia employer, purportedly limiting the scope of its coverage to the workers' compensation law of Virginia, given a situation in which an employee of the Virginia employer sustained a work-related injury in Maryland and filed a claim for compensation in our State. Furthermore, we must decide whether certain steps taken by an admitted "statutory employer" (the principal contractor who engaged the Virginia employer as a subcontractor on the Maryland job where the claimant was injured) to ascertain whether its subcontractor obtained workers' compensation insurance for its employees were adequate to escape liability under Md. Labor & Employ. Code Ann. ("LE") § 9–508 (Repl.Vol.1991). Appellant, Commercial Union Insurance Company, insurer of the Virginia employer/subcontractor, appeals from the judgment of the Circuit Court for Prince George's County, which denied its motion for summary judgment and granted appellees'[1] cross-motion for summary judgment, thereby affirming the decision of the Workers' Compensation Commission ("Commission"). The Commission found that appellant was the correct workers' compensation insurer in this case.

---

1. Appellees are D.D. & B. Construction Corporation ("DD & B"), the statutory employer/general contractor, and its workers' compensation insurer, Harleysville Mutual Insurance Company ("Harleysville"). They joined in making a cross-motion for summary judgment below, and submitted a single brief. The collaboration shall be referred to in this opinion as "DD & B/Harleysville." Due to the possibility of its coverage exposure, the Uninsured Employer's Fund ("Fund") is also an appellee in this action. As will be discussed, *infra*, because DD & B has admitted its status to be that of a statutory employer under LE § 9–508, any exposure of the Fund in this case has been diminished.

## QUESTIONS PRESENTED

Appellant had originally presented three questions for our resolution, but, because of DD & B/Harleysville's subsequent admission of its statutory employer status, the withdrawal in its reply brief of one of appellant's original arguments, and the modification of another,[2] we have reorganized and rephrased the remaining questions as follows:

I. Did the Commission err by finding that appellant was the correct insurer in this case?

II. Assuming the answer to the first question to be in the affirmative, are DD & B/Harleysville liable, under the statutory employer sections of the workers' compensation statute, to pay the claimant compensation?

## FACTS AND PROCEEDINGS BELOW

Rockwood Builders, Inc. ("Rockwood") is a small Virginia corporation engaged primarily in the construction trade, usually as a subcontractor. From 3 September 1992 until 3 September 1993, a period encompassing the occurrence of the accident that gave rise to this case, Rockwood carried a workers' compensation insurance policy that was assigned to the insurer through Virginia's Assigned Risk Plan. Appellant was the actual issuer of that policy. On Rockwood's written application for the insurance, the company only requested coverage for Virginia, although it indicated that it occasionally did business in various other states, including Maryland. In fact, directly beneath the space on the application form inquiring as to other states in which they did business, there was a "box" to be checked if coverage was desired for those states. Rockwood checked the "No" box, thereby expressly declining coverage for jurisdictions other than Virginia. The policy ultimately issued by appellant, in concordance with Rock-

---

2. Appellant's reply brief was prepared by different counsel than its original brief. In the original brief, appellant advanced the argument that the Commission had exceeded its authority to decide an issue of insurance coverage. This argument was expressly recanted in the reply brief.

wood's application, restricted its coverage to the workers' compensation laws of Virginia.

The claimant, Stanley Stuttard, first became employed as a carpenter by Rockwood in May of 1993, in the course of a job the company was performing in Pennsylvania.[3] It was at this time that Rockwood informed the claimant that it had an opening for him at an upcoming job in Maryland.[4] The job to which Rockwood was referring involved its being hired as a subcontractor by DD & B, the principal contractor, to perform construction work erecting a metal garage building at a publicly-operated landfill in Prince George's County. On 1 June 1993, prior to Rockwood starting work at the landfill, at DD & B's request, Rockwood's insurance agent provided DD & B with a "Certificate of Insurance" ("Certificate"), listing Rockwood, at its Virginia address, as the named insured, and appellant as its workers' compensation liability insurer. Contained on the Certificate were the insured's policy numbers for its general liability and workers' compensation coverage, and the monetary coverage ceilings on the aforementioned policies. There was a space provided for a "Description of Operations/Locations ...," but this space was left blank. The record contains no suggestion that DD & B made any further inquiry with regard to Rockwood's workers' compensation insurance coverage before permitting its workers onto the jobsite to begin work. On 17 July 1993, while working for Rockwood at the landfill, the claimant was severely injured in a fall from the roof of the garage under construction to the

3. The claimant maintained a Pennsylvania residence at all times relevant to this action.

4. This particular information concerning the specifics of the inception of the claimant's employment with Rockwood was derived from a transcript of an interview of the claimant by one of appellant's claims adjusters investigating the accident. The transcript was included in the appendix to DD & B/Harleysville's brief, but evidently not submitted to the Commission or to the circuit court. This information was proffered before the Commission and the circuit court by counsel, however, and in addition, documentary evidence was provided to the Commission regarding the dates of the claimant's employment relationship with Rockwood.

concrete floor below. Shortly thereafter, on 3 August 1993, Rockwood amended its workers' compensation insurance policy to reflect coverage for states other than Virginia.

The workers' compensation process in Virginia was put into motion, not by Mr. Stuttard filing a claim, but by Rockwood filing an employer's first report of the accident. After performing an investigation of the circumstances surrounding the accident, appellant denied coverage for the payment of benefits to the claimant, asserting a lack of jurisdiction under the workers' compensation law of Virginia. The correspondence from appellant to the claimant, and the reply from the claimant's attorney, provided in the appendix to DD & B/Harleysville's brief, demonstrates that the claimant "absolutely concur[red]" with appellant that Virginia lacked jurisdiction to consider any claim for benefits that Stuttard might file there. No one pursued a Virginia claim thereafter. This correspondence was not in the record before the Commission or the circuit court, and is actually at odds with the information provided by the parties to the circuit court in their cross-motions for summary judgment, which indicated that Virginia's consideration of the matter had actually proceeded far enough to be dismissed for lack of jurisdiction.[5]

On 30 August 1993, the claimant filed an application for compensation with the Maryland Workers' Compensation Commission. In January of 1994, the Commission held a hearing on the issues presented by the claim, and on 28 March 1994, issued its decision and order. The Commission found "that the claimant sustained an accidental injury arising out of and in the course of employment," and that Rockwood was the

---

5. As will be explained, *infra*, the question of whether Virginia has statutory jurisdiction over the claimant's claim is material to our decision in this case. This correspondence was included in the appendix to DD & B/Harleysville's brief ostensibly to correct mistaken information provided to the tribunals below by the parties. Nevertheless, it does not bear directly on the issue of whether Virginia jurisdiction would have been able to be lawfully maintained ultimately. We are not relying on the contents of the correspondence contained in the appendix to appellees' brief in our decision, and set forth the information at this stage merely for clarity.

correct employer and appellant the correct insurer. Thus, the Commission ordered Rockwood and appellant to pay the claimant temporary total disability from 18 July 1993, presumably computed under Maryland's workers' compensation law, as well as his medical bills in accordance with the Commission's Medical Fee Guide. The Commission also dismissed DD & B, Harleysville, and the Fund as "possible parties."

Appellant sought, in the Circuit Court for Prince George's County, judicial review of the Commission's decision. On 27 December 1994, appellant filed a motion for summary judgment. On 19 January 1995, DD & B/Harleysville responded to appellant's motion, and made a cross-motion for summary judgment. Oral argument was permitted on the cross-motions on 8 March 1995, after which the case was taken under advisement by the circuit court. On 12 May 1995, the circuit court issued its opinion and order, granting DD & B/Harleysville's cross-motion for summary judgment, and explicitly affirming the Commission's decision. This timely appeal followed. Additional facts will be supplied as necessary in our analysis.

## ANALYSIS

### Standard of Review

The standard of appellate review of a trial court's grant of a motion for summary judgment under Maryland Rule 2–501 is whether the lower court was legally correct. *Baltimore Gas & Elect. Co. v. Lane*, 338 Md. 34, 43, 656 A.2d 307 (1995); *Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 737, 625 A.2d 1005 (1993). When making a determination on summary judgment, a trial court makes no findings of fact, but rather determines whether a genuine dispute exists concerning a material fact which would preclude the entry of summary judgment. *Beatty, supra,* 330 Md. at 737, 625 A.2d 1005; *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985). A material fact, is one that will somehow affect the outcome of the case. *King, supra,* 303 Md. at 111, 492 A.2d 608. The general rules pertaining to the proper entry of summary

judgment apply with equal force on appeals from decisions of the Commission. *Dawson's Charter Serv. v. Chin,* 68 Md.App. 433, 440, 511 A.2d 1138 (1986).

## I.

■ Our analysis of appellant's potential liability must commence with the Court of Appeals's decision in *Kacur v. Employers Mut. Casualty Co.,* 253 Md. 500, 254 A.2d 156 (1969), one of the leading cases nationally in this area. In *Kacur,* the employer was a resident of Maryland who operated a business in Pennsylvania. The employer carried a workers' compensation insurance policy, which purportedly limited its inclusiveness to insuring against liability imposed upon the insured by the workers' compensation law of Pennsylvania. One of the employer's employees was injured in Maryland while in the course of his employment. The employer filed first reports of injury in both Maryland and Pennsylvania, but the employee only filed a claim for compensation in Maryland. The Maryland Commission awarded the employee compensation, and the employer's workers' compensation insurer denied coverage. The employer sought declaratory relief against its insurer, which was denied by the lower court. *Id.* at 501–04, 254 A.2d 156. The lower court was of the opinion that the literal language of the policy controlled, and that an insurer could not be held liable in a case where the compensation proceedings were instituted in a jurisdiction not mentioned in the policy. *Id.* at 504, 254 A.2d 156.

The Court of Appeals reversed. Relying on the views expressed in *Weinberg v. State Workmen's Ins. Fund,* 368 Pa. 76, 81 A.2d 906 (1951), and in Professor Arthur Larson's treatise, *Workmen's Compensation Law,* the Court held that, even though the claim was filed in Maryland, the insurer was liable to reimburse the employer to the extent, but only to the extent, that the insurer would have been liable under the workers' compensation law of Pennsylvania. *Kacur, supra,* 253 Md. at 510, 254 A.2d 156. In essence, the *Kacur* Court found that the insurer was not attempting to exclude from the policy coverage for injuries that occur out-of-state; rather, it

was attempting "to exempt [itself] from exposure to awards from foreign jurisdiction[s] not named in the policy," and "[a]s Professor Larson has stated, the courts look with disfavor on these latter limitations." *Id.* at 510, 254 A.2d 156. Stating the Court's explanation in a different fashion, the insurer contemplates in such policies the possibility that one of its insured's employees may be injured, and receive compensation, in the single designated state of coverage. Simply because an employee happened to cross into another political jurisdiction before he or she was injured does not ordinarily expand the exposure of the insurer beyond what was originally contemplated by the insurer and the insured, and should not prejudice the insurer, as long as its liability is calculated consonant with the law of the covered jurisdiction.[6]

There are many similarities between the facts of *Kacur* and the instant case. In each case, the employer's place of business was outside of Maryland. Both insurance policies purportedly limited their application to the workers' compensation laws of jurisdictions other than Maryland, and neither expressly excluded injuries that occur in other states. Both employees were injured in Maryland, and filed compensation claims in Maryland. According to DD & B/Harleysville, any factual differences between *Kacur* and the case at bar are insignificant or irrelevant, and *Kacur* is therefore controlling. Thus, DD & B/Harleysville conclude that appellant is liable to compensate the claimant to the extent permitted under the workers' compensation law of Virginia.

Although there may be many comparable aspects between *Kacur* and the instant case, there is one paramount difference. It is clear that the rationale underlying the *Kacur* holding was dependent upon the availability to the claimant of a choice of at least two jurisdictions in which the claim could lawfully be maintained. The fact that both Maryland and Pennsylvania would have had jurisdiction over the claim was expressly set forth:

---

6. This would not be true if such an exclusion for out-of-state injuries was specifically bargained for and expressed in the policy.

In the case at bar we have no doubt but, had the employee's claim been filed in Pennsylvania, the Bureau of Workmen's Compensation of Pennsylvania would have honored the claim and the [employer's workers' compensation insurer] would have been liable under its contract although the accident occurred in Maryland.

*Id.* at 507, 254 A.2d 156 (citations omitted). In addition, in the principal case relied upon by the *Kacur* Court, *Weinberg v. State Workmen's Ins. Fund, supra,* the Pennsylvania Supreme Court also found pivotal the availability of two compensable jurisdictions on the question of liability:

The fact that proceedings were instituted by [the claimant] in New Jersey is wholly irrelevant to the question of [the employer's] liability to [the claimant] under the Pennsylvania Workmen's Compensation Law. Of course, if there were any substantive difference between the terms of the New Jersey and the Pennsylvania Act such that the recovery obtained by [the claimant] in the former State could not have been obtained in our own Commonwealth,—*in other words, if [the employer was] not liable to [the claimant] for compensation under the Pennsylvania Workmen's Compensation Law, certainly the [insurer] would not be liable to [the employer] under the terms of the policy.* But it is not questioned that such liability did exist and accordingly [the employer was] under the duty of paying [the claimant] compensation—whether or not [the claimant] had brought proceedings in New Jersey—to at least the extent to which [the claimant] was entitled under the Pennsylvania Workmen's Compensation Law. . . .

*Id.,* 81 A.2d at 909 (emphasis supplied).

Moreover, in two cases from other jurisdictions cited by DD & B/Harleysville, the fundamental relevance of having two compensable jurisdictions is discussed. In *Smith and Chambers Salvage v. Insurance Management Corp.,* 808 F.Supp. 1492 (E.D.Wash.1992), the claimant could have filed for benefits either in Texas or Oklahoma. He chose Oklahoma and was awarded benefits. The employer was only insured in

Texas. In reaching its holding that the insurer was liable for the Oklahoma claim, the court explained:

> This court is convinced that the better view is that expressed in *Weinberg* and *Kacur*. Certainly, the employer contemplates coverage for his employee's injuries sustained at the worksite covered by the policy. To interpret the contract so as to make coverage dependent upon the employee's *choice of forums* is absurd. The insurer is not prejudiced by imposing liability to the extent contemplated under the worker's compensation law named in the policy.

*Id.* at 1502 (citation omitted) (emphasis supplied). Similarly, the Supreme Court of New Hampshire has declared:

> As we have discussed above, [the claimant's] injury rendered him eligible for Massachusetts benefits and, correspondingly, imposed liability on his employer to pay him such compensation. [The insurer], by its contract, expressly agreed to assume this liability. *That [the claimant] for reasons of his own chose to file in New Hampshire,* is a happenstance which is irrelevant to the question of [the insurer's] liability under the policy.

*American Mut. Ins. Co. v. Duvall,* 117 N.H. 221, 372 A.2d 263, 266 (1977) (emphasis supplied).

In contrast to *Kacur* and the cases discussed above, the claimant in the instant case did not have a choice of forums. Although the potentiality for the pursuit of a Virginia claim was apparently abandoned, not dismissed, the parties do not dispute on appeal, nor have they contested at any level of the proceedings below, the lack of Virginia jurisdiction over this workers' compensation matter.[7] Therefore, we do not find it necessary to make such a determination in our review of the propriety of the trial court's grant of DD & B/Harleysville's cross-motion for summary judgment and the denial of appellant's summary judgment motion because the "fact" that Vir-

---

7. We note that counsel for DD & B/Harleysville, at oral argument, indicated that the facts underlying the claimant's claim were not in dispute, but also stated that he "didn't know" whether Virginia had jurisdiction over the claimant's claim.

ginia jurisdiction is non-existent is not, and was not at any stage of the proceedings, in genuine dispute. Moreover, a determination of the jurisdictional issue under Virginia law is not a pure factual issue. Were we or the trial court compelled to decide whether Stuttard could have maintained a claim in Virginia, we would have little doubt from the undisputed facts provided to the Commission and the circuit court that the claimant would have been unsuccessful had he attempted to do so. The relevant Virginia statute provides, in pertinent part:

**Foreign Injuries.**—A. When an accident happens while the employee is employed elsewhere than in this Commonwealth which would entitle him or his dependents to compensation if it had happened in this Commonwealth, the employee or his dependents shall be entitled to compensation, if:

1. The contract of employment was made in this Commonwealth; and

2. The employer's place of business is in this Commonwealth; provided the contract of employment was not expressly for service exclusively outside of the Commonwealth.

Va.Code Ann. § 65.2–508 (1950, Repl.Vol.1995).[8] Indeed, as a leading commentator has indicated:

**Coverage of out-of-state injuries**

The [National Commission on State Workmen's Compensation Laws's] formula for out-of-state injury coverage— whenever either the hiring *or* the principal localization of the employment is in the state—has been adopted (with an exception or variant here and there) by 32 states.

\* \* \*

When [the] two requirements are made conjunctive, rather than disjunctive as in the [National] Commission formula, you get the narrowest type of statute. *By this test, the*

---

**8.** According to the face of the currently codified statute, the last revision was made during the 1991 legislative session, so the text would be essentially the same as it was at the time of the claimant's injury.

*narrowest statute of this kind still surviving is that of Virginia, which applies to out-of-state injuries only if the place of contract and the employer's place of business are both within the state—and not even then if the contract is for services outside the state.*

4 Larson, *Workmen's Compensation Law,* § 87.12 (1990) (underscored emphasis added). Thus, there are essentially three conjunctive factors required for the Virginia jurisdictional statute to apply, only one of which is supported by the facts of the instant case, i.e., that Rockwood's place of business was located in Virginia. The facts do not lend themselves to satisfying the remaining required factors (state where employment contract was made and the states where services are to be performed),[9] and a finding of Virginia jurisdiction would be *in dubio magnum.*

Because a Virginia forum was not available, the claimant was not provided with a choice of forums in which to bring his claim. Without such a choice, the rationale behind the *Kacur* decision does not exist, and accordingly, the concept of holding

---

**9.** Because these facts bearing on the Virginia jurisdictional question were not specifically highlighted in the record extract, we briefly review their content and location in the record. With respect to the place of hire, the following references are made to the claimant being hired in Pennsylvania (nowhere does DD & B/Harleysville contest the veracity of these statements—in fact, at the hearing on the cross-motions, DD & B/Harleysville's counsel reiterated, after arguing for *Kacur*'s applicability, that there was no dispute as to material facts): appellant's opening statement before the Commission, appellant's memorandum to the Commission, and appellant's motion for summary judgment. Curiously, however, on one of four copies of a typewritten wage report submitted to the Commission, the following holographic notation is made: "Employed [sic] was hired at Mt. Solon, Va." Similarly, on the question of where the claimant's services were to be performed, the report of one of appellant's claims adjusters, Gretchen Cornell, was submitted to the Commission. The report states: "The [claimant] told me that [Rockwood] had advised him that upon completion of the job in Maryland there were a couple more jobs in New Jersey and one in New York." There is no mention of any work to be performed in Virginia. While not a part of the record, the interview of the claimant contained in the transcript submitted in the appendix to DD & B/Harleysville's brief, *see* n. 4, *supra,* supports a finding that Stuttard's place of hire was in Pennsylvania for services to be performed outside of Virginia.

an insurer liable for benefits in a jurisdiction not covered in the insurance contract cannot be justified using *Kacur*'s reasoning. It is one thing to hold an insurer liable for the amounts that would have been awarded in a covered state when the employer has paid premiums for insurance coverage in one of the two possible states that have jurisdiction over the claim, and the claimant, for whatever reason, happens to file in the other state. It is quite another if the insurer is required to cover claims mandated by states not covered by the policy, but at the same time not recoverable in the state in which coverage *is* provided, for it would be akin to providing employers with "all states" workers' compensation coverage when they have only desired coverage, and paid the premiums, for one. Bereft of an overriding public policy justification for doing so,[10] such a decision would expand the insurer's contractual commitment under the insurance policy beyond that which was contemplated by the parties. Therefore, the trial court was legally incorrect when it affirmed the Commission's order, finding that appellant was the correct workers' compensation insurer in this case. We hold that the insurance policy issued by appellant to Rockwood does not require appellant to indemnify Rockwood for the amounts awarded to the claimant by the Commission.

## II.

██ Maryland's statutory employer provision provides, in relevant part:

**Liability of principal contractor for compensation.**

---

**10.** As Chief Judge Marbury wrote over a half century ago: "The Workmen's Compensation Act was passed to promote the general welfare of the State and to prevent the State and its taxpayers from having to care for injured workmen and their dependents, when under the law as it previously existed, such workmen could not recover damages for their injuries." *Paul v. Glidden Co.*, 184 Md. 114, 119, 39 A.2d 544 (1944). Such public policy considerations play no role in the determination of appellant's liability in this case because, as will be discussed in part II of this opinion, the legislature provided another statutory avenue by which the claimant's compensation will be paid.

(a) *In general.*—A principal contractor is liable to pay to a covered employee or the dependents of the covered employee any compensation that the principal contractor would have been liable to pay had the covered employee been employed directly by the principal contractor if:

> (1) the principal contractor undertakes to perform any work that is part of the business, occupation, or trade of the principal contractor;
>
> (2) the principal contractor contracts with a subcontractor for the execution by or under the subcontractor of all or part of the work undertaken by the principal contractor; and
>
> (3) the covered employee is employed in the execution of that work.

* * *

(d) *Indemnity.*—If a principal contractor is liable to pay compensation under this section, the principal contractor is entitled to indemnity from any employer who would have been liable to pay compensation independent of this section.

LE § 9–508. The Court of Appeals recently had the opportunity to set forth the purpose behind the section: "[T]he purpose of the statutory employer provision is the protection of the injured worker who might otherwise receive no compensation for work-related injuries if the worker's immediate employer had not obtained workers' compensation coverage and had little resources to pay damages in a personal injury action." *Para v. Richards Group*, 339 Md. 241, 252, 661 A.2d 737 (1995) (citations omitted). Moreover, in *Cogley v. Schnaper & Koren Construction Co.*, 14 Md.App. 322, 286 A.2d 819 (1972), a case cited with approval by the Court of Appeals in *Para*, we explained:

> We think the legislative purpose in enacting Article 101, § 62,[11] was to further the benevolent concept of Workmen's

---

**11.** Article 101, § 62 was the predecessor statute to LE § 9–508. The Revisor's Note to LE § 9–508 states that "this section is new language

Compensation and to achieve that result by providing an incentive to the principal contractor to see that his subcontractors carry Workmen's Compensation insurance upon their employees. *If the principal fails or neglects to ascertain that the subcontractor's employees are protected by Workmen's Compensation insurance coverage, it is the principal contractor who must bear the cost of injuries to the subcontractor's employees, subject only to the principal contractor's right to recover such costs from the subcontractor in an appropriate action.*

*Cogley, supra,* 14 Md.App. at 332, 286 A.2d 819 (emphasis supplied).

As mentioned above, DD & B admits its status as a statutory employer, or principal contractor, under LE § 9–508. It intimates, however, that because it requested a certificate of insurance from Rockwood, which showed that Rockwood had obtained a workers' compensation insurance policy, before allowing the subcontractor on the job-site, it did all that it could be expected to do, i.e., its behavior was commercially reasonable. In addition, at oral argument, counsel for both DD & B and appellant provided information to the effect that, typically, it is the industry custom for general contractors to request nothing more than a certificate of insurance from the subcontractor's insurance agent. Although it would provide more reliable' protection, the laborious alternative to viewing only the certificate would be for the general contractor to request a copy of the insurance policy itself, and have its legal counsel or risk management staff sift through it to determine whether the subcontractor had, in fact, provided workers' compensation coverage for its employees at the general contractor's job-site.[12]

---

derived without substantive change from former Art. 101, § 62." *See Para v. Richards Group, supra,* 339 Md. at 245, 661 A.2d 737.

**12.** It would seem to be a relatively simple procedure for a statutory employer to require that any certificate of insurance explicitly state that the subcontractor's workers' compensation insurance coverage encompasses a political jurisdiction of particular concern to it. Had DD & B

We can certainly empathize with the plight of a general contractor in this situation, striving to be efficient, especially when operating on a tight construction schedule and budget. Nevertheless, we need not detain ourselves long in resolving this question because neither the language of the statute itself, nor caselaw interpreting it, creates an escape hatch based upon commercially reasonable behavior by a statutory employer. Even if there were such a loophole, given the facts of this case, since the certificate of insurance is from a Virginia agent and lists a Virginia address for the employer, and the space on the form for a description of locations is left blank, we would be reluctant to find it applicable. According to the above-described policy dictates underlying the statutory employer section and the benevolent workers' compensation concept, requiring the principal contractor and its insurer to pay the injured employee's compensation and seek indemnification from the subcontractor, is a better alternative to leaving the injured employee uncompensated because the subcontractor neglected to provide insurance coverage and cannot afford to pay the compensation on its own. We see no reason in this case why DD & B should be placed outside the reach of the statutory employer section, and therefore hold that, upon remand to the Commission, DD & B should be substituted as the correct employer and Harleysville as the correct insurer in this case.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WITH INSTRUCTIONS TO GRANT APPELLANT'S MOTION FOR SUMMARY JUDGMENT, AND TO INSTRUCT THE WORKERS' COMPENSATION COMMISSION TO SUBSTITUTE DD & B AND HARLEYSVILLE AS THE CORRECT EMPLOYER AND INSURER IN THIS CASE. COSTS TO BE PAID BY DD & B/HARLEYSVILLE.**

---

noted this as a threshold requirement, or detected the absence of such detail on the certificate submitted by Rockwood's agent, perhaps its instant predicament could have been avoided.