992 A.2d 528

GRANITE STATE INSURANCE COMPANY

v.

Edin Najarro HERNANDEZ, et al.

No. 2497 Sept.Term, 2008.

Court of Special Appeals of Maryland.

March 30, 2010.

550

Stacey A. Moffet (Eccleston & Wolf, PC, on the brief), Hanover, MD, for Appellant.

Ester Goldring, Towson, MD (Sarah W. Rice, Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: JAMES P. SALMON *, DEBORAH S. EYLER, and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

RAYMOND G. THIEME, JR., Judge (Retired, Specially Assigned).

This appeal arises out of a decision by the Circuit Court for Baltimore City affirming a decision of the Workers' Compensation Commission ordering Granite State Insurance Company ("Granite State"), appellant, to provide workers' compensation insurance benefits for injuries sustained by Edin Najarro Hernandez, appellee, an employee of Granite State's insured, Stephen Rosenberg, trading as Rhino Shield, appellee.

Granite State presents the following three issues for our consideration:

I. Whether the circuit court improperly applied the "presumption of correctness" to the decision of the Workers' Compensation Commission;

II. Whether the circuit court erred as a matter of law in failing to follow applicable Maryland law when reaching its decision; and,

III. Whether the circuit court erred in concluding that, at the time of the accident, appellee Hernandez was principally employed in Virginia and improperly concluded that the conditions for other states coverage were satisfied.

For the reasons set forth below, we shall reverse the decision of the circuit court.

---

* James P. Salmon, J. participated in the hearing and conference of this case while an active member of this Court; he participated in he adoption of this opinion as a specially assigned member of this Court.

## Factual Background

It is undisputed that on August 29, 2007, Edin Najarro Hernandez was injured while working as an employee of Stephen Rosenberg, trading as Rhino Shield. Rhino Shield provides painting and other exterior ceramic coating products, and the subject accident occurred while Hernandez was working on a painting project for Rhino Shield at a church located in Baltimore, Maryland.

A workers' compensation claim was filed on behalf of Hernandez in the Workers' Compensation Commission (the "Commission") on September 25, 2007. The Uninsured Employer's Fund [1] was impleaded, and a hearing was held on December 11, 2007, concerning, *inter alia*, whether Granite State was the proper insurer to provide workers' compensation insurance benefits for the injuries sustained by Hernandez.

Rosenberg was the sole witness to testify before the Commission. He stated that in February or March 2006, he purchased the Rhino Shield franchise for the area outside the Capital Beltway. He uses his parents' home address in

---

1. The Uninsured Employers Fund was created in 1967 for the purpose of protecting " 'injured workers whose employers failed, either willfully or negligently, to carry workers' compensation insurance.' " *Uninsured Employers' Fund v. W.M. Schlosser Co., Inc.*, 186 Md.App. 599, 609, 975 A.2d 221 (2009) (citing 86 Op. Att'y Gen. 211, 212 (2001) (quoting *Uninsured Employers' Fund v. Lutter*, 342 Md. 334, 345, 676 A.2d 51 (1996))). If an uninsured employer fails to pay an award of compensation, the injured employee may apply to the Fund for payment of the award. *Id.*, 186 Md.App. at 609, 975 A.2d 221; *Workmen's Comp. Comm'n v. Prop. & Cas. Ins. Guar. Corp.*, 319 Md. 1, 3, 570 A.2d 323 (1990). An "uninsured employer" is one that "fails to secure payment of compensation to the covered employees of the employer in accordance" with § 9–402 of the Labor and Employment Article ("LE") of the Annotated Code of Maryland. *See* LE § 9–1001. The General Assembly has provided that an award of workers' compensation to an injured employee "is payable out of the Fund" when certain circumstances occur, including an employer's failure to "secure payment in accordance with [LE] § 9–402." *See* LE § 9–1002. When the Fund pays an award of compensation, the injured employee may apply to the Fund for payment of the award, and when the Fund pays an award of compensation, it becomes subrogated to the rights of the injured employee against the uninsured employer to collect the amount paid. LE §§ 9–1002(e) and 9–1003.

Virginia as his business address, receives mail there, meets with employees there, and lists that address on Rhino Shield's invoices. Rosenberg first heard of Hernandez, a painter, through a contact at BB & T Bank in Virginia. Rosenberg called Hernandez and later met with him at a Rhino Shield warehouse in Maryland. At that meeting, Rosenberg hired Hernandez as a painter, showed him a video about Rhino Shield, and discussed safety issues. The two agreed that Hernandez would be paid by the job.

Hernandez's first job was to paint columns on a house in Potomac, Maryland, for which he was paid $600. His second job involved painting at a house in Davidsonville, Maryland, for which he was paid $1,700. Hernandez's third, and final, job was to paint columns on a church in Baltimore City. On August 29, 2007, Rosenberg received a telephone call from Raul, the only other Rhino Shield employee working at the church, who told him that while he was in the bathroom he heard Hernandez's ladder fall. When Raul ran outside, he found Hernandez on the concrete steps of the church. At the time of his injury, Hernandez had been working for Rhino Shield for 11 days.

Rosenberg testified that at the time he hired Hernandez he had jobs in Virginia, but he did not give them to Hernandez, even though he wanted to work in his home state of Virginia. Nevertheless, Rosenberg testified that both he and Hernandez anticipated that Hernandez would become the director of operations of painting and would base his operations out of Woodbridge, Virginia. Rosenberg acknowledged that "we weren't at that stage, but I think would have quickly been at that stage." According to Rosenberg, if Hernandez had not been injured, most of his work would have been at Virginia locations.

The workers' compensation insurance policy at issue in the instant appeal was issued by Granite State to Rosenberg on September 7, 2006. The application for that coverage was

signed by Rosenberg and submitted to Granite State[2] on his behalf by his insurance agent, BB & T Insurance Services. The application lists Rosenberg's parents' address as the only "location" for which coverage was sought. With regard to employee travel, the application stated:

14. will travel to DC & MD on incidental basis. All employees from VA. Client may travel to SC & GA, but will obtain WC coverage thru those states w/another agent.

After the application for insurance coverage was accepted, Granite State issued a workers' compensation and employers liability policy binder which provided, in part:

This is to acknowledge receipt of an initial or deposit premium payment and your application for coverage through the Workers Compensation Insurance Plan for the State of VIRGINIA.

The "application notes" indicate that "[c]overage has been requested for the following states: VA."

On September 7, 2006, Granite State issued a workers compensation and employers liability insurance policy ("the policy") to Rosenberg at his parents' Virginia address. The policy required Granite State to "pay promptly when due the benefits required of you by the workers compensation law," and defined workers compensation law as "the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page." Item 3A of the policy provided:

A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here: VA.

In addition, the policy provided that it "covers all of your workplaces listed in Items 1 and 4 of the Information Page; and it covers all other workplaces in Item 3.A. unless you have other insurance or are self-insured for such workplaces." Item 1 of the Information Page listed the address of Rosenberg's parents' home in Virginia and Item 4 referenced an

---

2. Granite State's parent company is A.I.G. Insurance Company.

"Extension of Information Page" which provides "State of Virginia Totals."

The policy also included a "Residual Market Limited Other States Insurance Endorsement," which provided:

PART THREE OTHER STATES INSURANCE

    A.  How This Insurance Applies

    1.  We will pay promptly when due the benefits required of you by the workers compensation law of any state not listed in Item 3.A. of the Information Page if all of the following conditions are met:

    a.  The employee claiming benefits was either hired under a contract of employment made in a state listed in Item 3.A. of the Information Page or was, at the time of injury, principal [sic] employed in a state listed in Item 3.A. of the Information Page; and

    b.  The employee claiming benefits is not claiming benefits in a state where, at the time of injury, (i) you have other workers compensation insurance coverage, or (ii) you were, by virtue of the nature of your operations in that state, required by that state's law to have obtained separate workers compensation insurance coverage, or (iii) you are an authorized self-insurer or participant in a self-insured group plan; and

    c.  The duration of the work being performed by the employee claiming benefits in the state for which that employee is claiming benefits is temporary.

* * *

IMPORTANT NOTICE

If you hire any employees outside those states listed in Item 3.A. on the Information Page or begin operations in any such state, you should do whatever may be required under that state's law, as this endorsement does not satisfy the requirements of that state's workers compensation law.

At the conclusion of the hearing, the Commission found, *inter alia,* that Granite State was the proper insurer; that on

August 29, 2007, Hernandez sustained an accidental injury arising out of and in the course of his employment; that Hernandez's disability was the result of his accidental injury; and, that at the time he sustained his accidental injury, Hernandez was not engaged in willful misconduct. The Commission also dismissed the claim against the Uninsured Employers Fund.

Granite State filed in the Circuit Court for Baltimore City a petition for judicial review of the decision of the Commission on the ground that it was not the proper insurer. Both Granite State and the Uninsured Employer's Fund filed motions for summary judgment, which were denied. A bench trial was held on October 17, 2008. Although served with a subpoena, Rosenberg failed to appear at the trial. The court found him unavailable for trial and considered the testimony he gave before the Commission. The court affirmed the decision of the Commission, finding that Granite State was the proper insurer of Rhino Shield for the accidental injury involving Hernandez. In reaching that decision, the trial judge stated:

As I said, for me, the issue comes down to those three requirements in the contract and more specifically, to the one.

And that is, the employee being hired under contract of employment made in Virginia; or, at the time of injury, was principally employed in Virginia.

And to come down even closer, at the time of injury, wasn't principally employed in Virginia. And that issue, I seesaw back and forth. I'm still not exactly sure—convinced, but I don't need to be convinced. I simply—it's a preponderance of the evidence. And if I'm sitting on that precipice of not knowing which way, there is a presumption.

I was essentially convinced that at the time of the injury "was principally employed in Virginia" could not apply in this case, because he was, . . . clearly hired in Maryland by a company that was located in Maryland. He performed exclusively in Maryland. So, he went into Virginia and

bought some stuff with a credit card. But, other than that, everything was done in Maryland, et cetera, et cetera, et cetera.

However—however, the testimony, that was presented at the Workers' Compensation Commission and was read into the record here and was placed into evidence here, from the Workers' Compensation Commission, was that he and his employer had been of the mind that they would—he would become the Director of Operations.

While it seemed to me that that was in the future and was not on the day of the accident; and, therefore, not terribly relevant, I have come to the conclusion that at the time—at the time of the accident, based on all the evidence in this transcript, at the time of the accident, this employee was not just employed as a painter, but he was employed and principally employed to be the Director of Operations.

The work he was doing at the time was as a painter, but his employment—even at that time, his [sic] is the guy who is here on this job. He is employed at this time with the idea—and even though it is in the future, he is employed to bring him along as the Director of Operations. That's my idea of having this guy. He is the guy.

> As I said, I feel it's a close call. But aided by the presumption that comes along with this as an appeal from the Workers' Compensation Commission, I feel it's enough to sustain the finding of the Workers' Compensation Commission; and I will, therefore, do that; and further, affirm the Workers' Compensation Commission's finding that there was no willful misconduct on the part of the employee.

### Standard of Review

Appeals from the Commission to the circuit court are conducted essentially as trials *de novo.* *Barnes v. Children's Hospital,* 109 Md.App. 543, 552, 675 A.2d 558 (1996)(and cases cited therein). When the circuit court hears the case without a jury, our review of the factual findings is

governed by the clearly erroneous standard. Md. Rule 8–131(c). Pursuant to LE § 9–745(b)(1), "the decision of the Commission is presumed to be prima facie correct." Our function is not to determine whether we might have reached a different conclusion on the evidence. *Barnes*, 109 Md.App. at 553, 675 A.2d 558. Rather, we view the evidence in the light most favorable to the prevailing party, assume the truth of the evidence presented, and give the prevailing party the benefit of all favorable inferences fairly deducible from the evidence. *Id.* (citing *Mercedes–Benz v. Garten*, 94 Md.App. 547, 556, 618 A.2d 233 (1993)). We cannot set aside the trial court's factual findings if there is any competent, material evidence to support them. *Id.*

■■■ The clearly erroneous standard "does not apply to a trial court's determinations of legal questions or conclusions based on findings of fact." *Heat & Power Corp. v. Air Products & Chemicals, Inc.*, 320 Md. 584, 591, 578 A.2d 1202 (1990). As we stated in *Barnes*,

> The Maryland Workers' Compensation Act, which entitles covered employees to compensation for accidental personal injuries that arise "out of and in the course of employment," … is a remedial statute. Its provisions are liberally construed in favor of the employee. Thus, any ambiguity in the law is resolved in favor of the claimant. The doctrine of liberal construction does not mean, however, that coverage may be granted beyond that which is authorized by the provisions of the Act.

*Barnes*, 109 Md.App. 543, 553–54, 675 A.2d 558.

In the appeal at hand, we are asked to consider whether the circuit court erred in determining that Granite State was the proper insurer. Resolution of that issue requires us to look to the terms of the insurance policy. In Maryland, "the interpretation of an insurance policy is guided by the same principles that apply to the construction of other contracts." *Philadelphia Indem. Ins. Co. v. Maryland Yacht Club, Inc.*, 129 Md.App. 455, 467, 742 A.2d 79 (1999). When construing a contract, our goal is to "ascertain and effectuate the intention

of the contracting parties." *Id.* Maryland courts give "the words of the contract their ordinary and accepted meaning, looking to the intention of the parties from the instrument as a whole." *Finci v. American Cas. Co.,* 323 Md. 358, 369–70, 593 A.2d 1069 (1991). The contract is "[t]he primary source for determining the intent of the parties." *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship,* 109 Md. App. 217, 291, 674 A.2d 106 (1996) (and cases cited therein), *aff'd,* 346 Md. 122, 695 A.2d 153 (1997).

With these standards in mind, we shall discuss the issues presented by Granite.

## Discussion

### I.

■ Granite first contends that the circuit court improperly construed its role in the trial *de novo* from the Commission because it failed to apply applicable Maryland law and erroneously applied the presumption of correctness to the Commission's factual finding that Hernandez was principally employed in Virginia at the time of the accident. According to Granite, even if the circuit court did not erroneously apply the presumption of correctness, but rather evaluated the evidence presented, its finding that Hernandez was principally employed in Virginia at the time of the accident was clearly erroneous because none of the evidence, nor any reasonable inference from it, can support such a conclusion. We agree and explain.

From the record before us, it is unclear whether the circuit court erroneously treated the presumption of correctness as requiring it to accept the Commission's finding that Hernandez was principally employed in Virginia or whether it weighed the evidence, and the inferences reasonably drawn from it, and reached the same conclusion as the Commission. Nevertheless, whether by an erroneous application of the presumption of correctness or through its own evaluation of the evidence, the circuit court concluded that because Rosenberg contemplated the possibility that Hernandez might serve

as Rhino Shield's director of operations and work in Virginia in the future, he was principally employed in Virginia at the time of the accident. Neither the facts presented before the Commission nor any reasonable inference from those facts support such a conclusion.

It is undisputed that Rosenberg first met with Hernandez and hired him at a Rhino Shield warehouse in Temple Hills, Maryland. It is also undisputed that prior to the accident Hernandez worked on only three projects for Rhino Shield and that all three of those jobs were located in Maryland. At the hearing before the Commission, Rosenberg testified as follows:

[Counsel for Granite]: And on the three jobs then that Mr. Hernandez worked for you, they were all located in Maryland?

[Rosenberg]: Correct.

Q. When you hired Mr. Hernandez, did you have any Virginia jobs lined up?

A. Yes, ma'am.

Q. Was Mr. Hernandez assigned to work to [sic] any of those jobs?

A. No, just priorities. I had backed up some jobs. He wanted to work more in Virginia because he lived in Woodbridge.

\* \* \*

[Counsel for Uninsured Employers Fund]: Okay. Based on the testimony that you've given, am I correct in understanding that had he not injured himself and continued to work for you, that most of his work would have been in Virginia locations?

\* \* \*

[Rosenberg]: With the traffic in the D.C. area and with the price of gasoline and time, Eddie [Hernandez] and I both had the same thought, that he would be the director of operations of painting and hire people and he would be based down in Woodbridge. Eddie made a couple of com-

ments to me a couple of times about driving all the way up to Davidsonville, Baltimore and Brooklyn. If things had worked out—I haven't done any more painting since I lost Eddie. I think Eddie would been [sic] tremendous and that's what I try to do, is break the area out geographically and let him run the crews the way he wants to do it.

Q. So let me get back to my question. I think the answer is yes. The intent, from your point of view and his point of view, was for him to work primarily in Virginia. Is that a correct statement?

[Counsel for Granite]: Objection.

[Rosenberg]: If we had an ideal—

THE COMMISSION: Overruled.

[Rosenberg]:—situation, Eddie wouldn't have done physical work.

THE COMMISSION: He would have been the director of operations and run the crews from Woodbridge.

[Rosenberg]: That's correct.

\* \* \*

[Rosenberg]: We weren't at that stage, but I think would have quickly been at that stage.

Both the Commission and, to some extent, the circuit court looked to this testimony to support their conclusions that, at the time of the accident, Hernandez was principally employed in Virginia. That conclusion, however, is not supported by the evidence. The evidence established only that Hernandez wanted to work more in Virginia, and that Rosenberg contemplated that Hernandez might work as the director of operations based out of Woodbridge, Virginia at some time in the future. That this would actually happen was mere speculation and conjecture. Notwithstanding Hernandez's desire to work more in Virginia, it is undisputed that he worked on three jobs for Rhino Shield in Maryland. Rosenberg did not testify that Hernandez was scheduled to assume the director of operations position on a date certain, but rather testified that they "weren't at that stage." Rosenberg further testified that, in an ideal situation, Hernandez would not do any physical work.

Yet the evidence established that at the time of the accident, Hernandez was not the director of operations, but was doing physical work as a painter for Rhino Shield in Maryland. Accordingly, the circuit court erred in concluding that Hernandez was principally employed in Virginia at the time of the accident.

## II. & III.

We turn now to the insurance policy to determine whether workers' compensation insurance coverage is available notwithstanding that, at the time of the accident, Hernandez was principally employed in Maryland. We look first to the terms of the insurance policy itself regarding coverage for workers' compensation claims arising outside of Virginia. Pursuant to the policy, such coverage is available under the Residual Market Limited Other States Insurance Endorsement if required by the "workers compensation law of any state not listed in Item 3.A. of the Information Page" and where certain conditions are met. The first question we must address, therefore, is whether coverage is required by the workers compensation laws of Maryland.

On that issue, Granite State directs our attention to three Maryland cases, which we shall discuss *seriatim*. The first is the Court of Appeals' decision in *Kacur v. Employers Mutual Casualty Co.*, 253 Md. 500, 254 A.2d 156 (1969), in which the employer, John C. Kacur Tire Service, obtained a Pennsylvania workers' compensation policy from Employers Mutual Casualty Company ("Employers Mutual"). *Id.* at 501, 254 A.2d 156. The policy listed only a Pennsylvania address and was limited to providing benefits under the laws of Pennsylvania. Sesler, an employee of Kacur Tire Service, was injured during the course of his employment in Rockville, Maryland. *Id.* at 503, 254 A.2d 156. Sesler filed a claim for workers' compensation benefits in Maryland and the Maryland Workers' Compensation Commission made an award to him. *Id.* Employers Mutual denied coverage to Kacur and suit was filed.

The circuit court held that because the insurance policy did not provide coverage under the workers' compensation laws of Maryland, the insurer could not be held liable for proceedings instituted under the workers' compensation law of that state even though the accident occurred in Maryland and the Commission granted an award. *Id.* at 503–04, 254 A.2d 156.

The Court of Appeals reversed the circuit court and ordered that Employers Mutual reimburse Kacur "to the extent, and only to the extent, that [Kacur] would have been liable under the Workmen's Compensation Laws of the State of Pennsylvania." *Id.* at 510, 254 A.2d 156. The Court recognized that if Sesler's claim had been filed in Pennsylvania, it undoubtedly would have been honored and Employers Mutual would have been liable under the policy, notwithstanding that the accident occurred in Maryland. The Court stated:

> In the case at bar we have no doubt but, had the employee's claim been filed in Pennsylvania, the Bureau of Workmen's Compensation of Pennsylvania would have honored the claim and [Employers Mutual] would have been liable under its contract although the accident occurred in Maryland.
>
> \* \* \*
>
> It should be noted that what we are dealing with here was not an attempt by the terms of the insurance policy to exclude the operation of the policy from out-of-state injuries but to exempt the insurance carrier from exposure to awards from foreign jurisdiction not named in the policy. As Professor Larson has stated, the courts look with disfavor on these latter limitations.

*Id.*

In 1996, we had occasion to address the application of the Court of Appeals' ruling in *Kacur*. In *Commercial Union Ins. Co. v. Harleysville Mutual Ins. Co.*, 110 Md.App. 45, 675 A.2d 1059, *cert. denied*, 343 Md. 679, 684 A.2d 453 (1996), the employee of a Virginia employer was injured on a job site in Maryland. *Id.* at 47, 675 A.2d 1059. The workers' compensation insurance policy was issued for coverage arising only out of the workers' compensation laws of Virginia and, although

the employer noted on the application that work was performed outside of Virginia, the employer expressly declined coverage for jurisdictions outside Virginia. *Id.* at 49, 675 A.2d 1059. A workers' compensation claim was filed in Maryland, but Commercial Union, the insurer, denied coverage on the ground that jurisdiction was lacking. *Id.* at 50, 675 A.2d 1059. Both the Commission and the circuit court concluded that Commercial Union was the proper insurer, but on appeal, we reversed.

We distinguished the facts in *Commercial Union* from those presented in *Kacur*, stating that "[i]t is clear that the rationale underlying the *Kacur* holding was dependent upon the availability to the claimant of a choice of at least two jurisdictions in which the claim could lawfully be maintained." *Id.* at 52, 675 A.2d 1059. Unlike Pennsylvania, Virginia's statute governing foreign injuries, which has been described as the "narrowest statute of this kind still surviving," allows coverage for injuries occurring outside Virginia only if Virginia is both the place of contract and the employer's place of business. *Id.* at 56–57, 675 A.2d 1059. In *Commercial Union*, unlike *Kacur*, if a workers compensation claim had been asserted in Virginia, it would have been unsuccessful, so the claimant did not have a choice of forums. In reaching our conclusion, we stated:

> It is one thing to hold an insurer liable for the amounts that would have been awarded in a covered state when the employer has paid premiums for insurance coverage in one of the two possible states that have jurisdiction over the claim, and the claimant, for whatever reason, happens to file in the other state. It is quite another if the insurer is required to cover claims mandated by states not covered by the policy, but at the same time not recoverable in the state in which coverage is provided, for it would be akin to providing employers with "all states" workers' compensation coverage when they have only desired coverage, and paid the premiums, for one. Bereft of an overriding public policy justification for doing so, such a decision would expand the insurer's contractual commitment under the

insurance policy beyond that which was contemplated by the parties.

*Id.* at 58, 675 A.2d 1059.

More recently, in *Smigelski v. Potomac Ins. Co. of Illinois,* 403 Md. 55, 939 A.2d 189 (2008), the Court of Appeals considered a case factually similar to the one at hand. *Smigelski* involved an injury to an employee of a Virginia employer at a Maryland job site. The policy at issue only provided coverage for injuries arising out of and in the course of employment in Virginia, which was the only state listed on the application. *Smigelski,* 403 Md. at 58, 939 A.2d 189. In addition, the policy contained a Residual Market Limited Other States Insurance Endorsement identical to the one at issue in this instant case. *Id.* at 58–59, 939 A.2d 189.

At the time of the accident in *Smigelski,* the employee was an illegal alien residing in Virginia. *Id.* at 59, 939 A.2d 189. Under Virginia law at the time of the accident, the employee was not eligible for workers' compensation benefits because of his immigration status. *Id.* at 64, 939 A.2d 189. Relying on our decision in *Commercial Union,* the Court of Appeals recognized that because the employee's status as an illegal alien disqualified him from coverage under Virginia's workers' compensation law, there was no alternate forum available to the employee and, therefore, the reasoning employed in *Kacur* did not extend coverage for the injuries sustained in Maryland.

With these cases in mind, we now turn our attention to the facts of the instant case to determine whether workers' compensation insurance coverage is available notwithstanding that, at the time of the accident, Hernandez was principally employed in Maryland. As in *Commercial Union* and *Smigelski,* it is clear that Hernandez would not have been entitled to workers' compensation benefits if a claim had been filed in Virginia. Virginia law requires that workers' compensation benefits be provided to an employee who has sustained an injury in a work-related accident outside of Virginia only if the contract of employment was made in Virginia and the employ-

er's place of business is in Virginia, provided that the employment contract was not expressly for service exclusively outside Virginia. Va.Code Ann., § 65.2–508 (2009).[3]

In the case at hand, it is undisputed that Hernandez's employment contract was made in Maryland and that, although Rosenberg used his parents' address in Virginia as a business address, Rhino Shield's business was conducted from a warehouse in Temple Hills, Maryland. Like the employers in both *Commercial Union* and *Smigelski*, Rosenberg purchased workers' compensation insurance for injuries occurring in Virginia. In addition, Hernandez's employment contract was not expressly for service exclusively outside Virginia. Rosenberg testified that Rhino Shield performed work in Maryland, Virginia, and the District of Columbia, and his application for insurance coverage indicated that the employees were from Virginia and traveled to the District of Columbia and Maryland on an "incidental" basis. The conditions set forth in the Virginia Code are not satisfied in this case. Unlike in *Kacur*, Hernandez did not have a choice of forums that was frustrated only by the selection of a location for filing the claim. We conclude, therefore, that the circuit court erred in upholding the Commission's decision because, in failing to apply the applicable law, it expanded the insurer's contractual

---

**3.** Section 65.2–508 of the Code of Virginia, which governs foreign injuries, provided at the time of the accident, as it does now:

A. When an accident happens while the employee is employed elsewhere than in this Commonwealth which would entitle him or his dependents to compensation if it had happened in this Commonwealth, the employee or his dependents shall be entitled to compensation, if:

1. The contract of employment was made in this Commonwealth; and

2. The employer's place of business is in this Commonwealth; provided the contract of employment was not expressly for service exclusively outside of the Commonwealth.

B. However, if an employee shall receive compensation or damages under the laws of any other state, nothing herein contained shall be construed so as to permit a total compensation for the same injury greater than is provided for in this title.

Va.Code Ann. § 65.2–508 (2009).

commitment under the policy beyond what was contemplated by the parties.

 ▮  Our holding does not rest solely on the failure of the circuit court to apply the applicable law.  Even if Maryland law required that workers' compensation benefits be provided, the Residual Market Limited Other States Insurance Endorsement, *supra,* allows coverage only when all of the following conditions are met: 1) the employee claiming benefits was either hired under a contract of employment made in Virginia or, at the time of the injury, was principally employed in Virginia;  and 2) the employee is not claiming benefits in a state where, at the time of injury, the employer either had other workers' compensation insurance, was required to have separate workers' compensation insurance, or was a participant in a self-insured plan;  and 3) the employee's work in the state in which he is claiming benefits was temporary.

As we have already stated, Hernandez was hired under a contract of employment made in Maryland and, at the time of his injury, was principally employed in Maryland.  As for the second condition, it is undisputed that Rhino Shield was not insured by another workers' compensation insurance policy, nor is there any evidence that it is an authorized self-insurer or participant in a self-insured group plan.  Under Maryland law, Rhino Shield was required to provide workers' compensation coverage for Hernandez as a covered employee.  *See* LE §§ 9–201 and 9–203(a).  In *Smigelski,* the Court of Appeals considered the identical endorsement provision and held that "by its own terms, [the endorsement] excluded coverage in states other than Virginia for activities requiring the employer to procure workers' compensation insurance in those states." *Smigelski,* 403 Md. at 57, 939 A.2d 189.  As in *Smigelski,* Rhino Shield failed to obtain workers' compensation insurance coverage for its employees working in Maryland.  By its own terms, the endorsement at issue here excludes coverage for Hernandez's work in Maryland, and the second condition of the endorsement is not satisfied.

The third and final condition required in order to obtain other states insurance under the endorsement is that the duration of the work being performed by Hernandez was temporary. The circuit court did not address this condition, but it is clear to us that except for speculation about plans for Hernandez to one day be employed in Virginia, there was no evidence to suggest that his work in Maryland was temporary to otherwise regular work in Virginia. Despite Rosenberg's testimony that Hernandez wanted to work closer to his home in Virginia, Hernandez was assigned to jobs only in Maryland. There is absolutely nothing in the record to suggest that Hernandez's regular employment had become "centralized and fixed so clearly" in Virginia that his work in Maryland was "only casual, incidental and temporary in comparison." *McElroy Truck Lines v. Pohopek*, 375 Md. 574, 593, 826 A.2d 474 (2003).

**JUDGMENT REVERSED; COSTS TO BE PAID BY APPELLEES.**