37 A.3d 1053

Scott **GARRITY**

v.

**INJURED WORKERS' INSURANCE FUND, et al.**

No. 1185, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Feb. 9, 2012.

Dennis E. Cuomo (William R. Bacon, Jr., on the brief), Baltimore, MD, for appellant.

Jules H. Rosenberg (Injured Workers' Insurance Fund), Towson, MD, for appellee.

Panel: EYLER, DEBORAH S., HOTTEN, and
RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

HOTTEN, J.

Appellant, Scott Garrity, a part-time bailiff at the District Court for Baltimore City, was involved in an automobile accident as he returned to the courthouse. Appellant submitted a claim to the Workers' Compensation Commission ("the Commission"), which concluded appellant's injury arose out of and was in the course of his employment. Appellees, the District Court of Maryland and Injured Workers' Insurance Fund, filed a petition for judicial review. The Circuit Court for Baltimore County reversed and remanded the decision. Appellant noted an appeal, and in his own words, presents the following question:

1. Did the trial judge err in its reversal of the Commission's finding that the Appellant had suffered a compensable injury arising out of and in the course of employment?

For the reasons that follow, we affirm the judgment of the circuit court.

## BACKGROUND

On June 8, 2006, appellant arrived at the District Court for Baltimore City, Hargrove Courthouse, and realized that he was wearing a Christmas tie. Appellant did not believe the tie was appropriate because, according to him, a bailiff was supposed to wear a blue blazer, a pair of gray slacks, a dress shirt, and a light or dark blue tie. Appellant, thus, decided that he would call his son and ask him to bring a different tie. Before he called his son, appellant spilled coffee on his shirt and tie. Because appellant was assigned to courtroom five, and there were two bailiffs assigned to that courtroom, he decided that he would drive home and change. According to

appellant, in courtroom five, "one bailiff would take over the complete courtroom . . ." if the other needed to run an errand. Accordingly, appellant asked Duane Gamble, the other bailiff assigned to courtroom five, to cover him.

Steve Colburn, the Lead Bailiff at the Hargrove Courthouse, indicated that it was customary for one bailiff to cover another if he or she needed to use the bathroom, or if the court needed a bailiff to make a copy of a document, when two bailiffs were assigned to courtroom five. However, Mr. Colburn noted that it was not customary for a bailiff to leave the courthouse, without seeking permission, when assigned to courtroom five. Moreover, Mr. Colburn provided that he "liked" to know the whereabouts of a bailiff in case he needed them in a different location. Larry Johnston, the supervising bailiff for the District Court for Baltimore City, noted that a bailiff was permitted to cover another if he or she needed to use the restroom when two bailiffs were assigned to courtroom five.[1] However, he indicated that if a bailiff left the courthouse, he or she "should" advise their supervisor. Furthermore, Mr. Johnston provided that he was unaware of any "custom" in which bailiffs were permitted to leave the courthouse and cover for each other without notifying a supervisor.

Nevertheless, on June 8, 2006, appellant left the courthouse around 8:55 a.m. without notifying a supervisor. At or around 9:05 a.m., appellant arrived at his house and changed his shirt and tie. As appellant drove back to the courthouse, he was struck by a truck head-on. Appellant suffered serious injuries and spent approximately one month in the hospital. Appellant thereafter filed a workers' compensation claim with the Commission. The Commission held a hearing and concluded that appellant's injury arose out of and was in the course of his employment. Appellees filed a petition for judicial review.

During the bench trial, appellant argued that his injuries were compensable despite the fact that he was driving to

---

1. Mr. Johnston noted that he spent approximately thirty to forty percent of his physical time at the Hargrove Courthouse.

work. Appellant asserted that his claim was compensable under the special mission and dual purpose exceptions to the "going and coming rule," because the "Apparel and Appearance Guidelines" required him to change his shirt and tie, and bailiffs in courtroom five regularly covered for each other. Appellant also asserted that the personal comfort exception to the "going and coming rule" made his claim compensable because: (1) the decision to go home and change benefitted him and the District Court; (2) bailiffs regularly covered for each other in courtroom five when errands needed to be run; (3) the trip was permissible because appellant was changing his attire to be appropriately dressed; and (4) appellant was attending to a reasonable comfort at the time of the injury.

Appellees countered that the special mission and dual purpose exceptions were not applicable because appellant was not authorized to make the trip home. Appellees then asserted the personal comfort exception was not applicable because the exception concerned sanctioned coffee breaks. The circuit court reversed and remanded the case to the Commission. In reversing, the court concluded that appellant did not receive permission to leave the courthouse. The court further held that the Commission "did not correctly construe the established law" because appellant was driving to work and the exceptions to the "going and coming rule" were not applicable. Appellant thereafter noted an appeal.

## STANDARD OF REVIEW

■ When a party appeals a decision from the Commission, a circuit court "essentially" conducts a *de novo* trial. *Granite State Ins. Co. v. Hernandez*, 191 Md.App. 548, 557, 992 A.2d 528 (2010) (citing *Barnes v. Children's Hosp.*, 109 Md.App. 543, 553, 675 A.2d 558 (1996)). In those situations, we review a court's factual findings under the clearly erroneous standard. Md. Rule 8–131(c); *see Granite State Ins. Co.*, 191 Md.App. at 557–58, 992 A.2d 528. Moreover, we recognize that the "the decision of the Commission is presumed to be prima facie correct...." Md.Code (2008), § 9–745(b)(1) of the Labor & Employment Article ("L.E."); *accord Granite State*

*Ins. Co.,* 191 Md.App. at 558, 992 A.2d 528; *Barnes,* 109 Md.App. at 553, 675 A.2d 558.

 However, " '[o]ur function is not to determine whether we might have reached a different conclusion' on the evidence." *Id.* (citing *Mercedes–Benz v. Garten,* 94 Md.App. 547, 556, 618 A.2d 233 (1993)). "Rather, we view the evidence in the light most favorable to the prevailing party, assume the truth of the evidence presented, and give the prevailing party the benefit of all favorable inferences fairly deducible from the evidence." *Granite State Ins. Co.,* 191 Md.App. at 558, 992 A.2d 528. Accordingly, we shall not set aside findings if there is competent evidence to support them. *Id.*

 As a corollary, we note that the clearly erroneous standard " 'does not apply to a trial court's determinations of legal questions or conclusions based on findings of fact.' " *Id.* (quoting *Heat & Power Corp. v. Air Products & Chemicals, Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990)). In *Barnes,* 109 Md.App. at 553–54, 675 A.2d 558, we elaborated on the issue:

> The Maryland Workers' Compensation Act, which entitles covered employees to compensation for accidental personal injuries that arise "out of and in the course of employment," L.E. § § 9–101(b), 9–501(a), is a remedial statute. Its provisions are liberally construed in favor of the employee. *Lovellette v. Mayor & City Council of Baltimore,* 297 Md. 271, 282, 465 A.2d 1141 (1983); *Bethlehem–Sparrows Point Shipyard, Inc. v. Hempfield,* 206 Md. 589, 594, 112 A.2d 488 (1955); *Ewing v. Koppers Co.,* 69 Md.App. 722, 731, 519 A.2d 790 (1987). Thus, any ambiguity in the law is resolved in favor of the claimant. *Mayor & City Council of Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757 (1995); *Cline v. Mayor & City Council of Baltimore,* 13 Md.App. 337, 344, 283 A.2d 188 (1971), *aff'd,* 266 Md. 42, 291 A.2d 464 (1972). The doctrine of liberal construction does not mean, however, that coverage may be granted beyond that which is authorized by the provisions of the Act. *Tortuga, Inc. v. Wolfensberger,* 97 Md.App. 79, 83, 627 A.2d 56, *cert. denied,* 332 Md. 703, 632 A.2d 1209 (1993).

## DISCUSSION

▮▮ A compensable "accidental personal injury" occurs when an "injury . . . arises out of and in the course of employment. . . ." L.E. § 9–101(b). An injury is considered to arise "out of employment if it results from the nature, conditions, obligations, or incidents of the employment." *Barnes,* 109 Md.App. at 554, 675 A.2d 558 (citing *Knoche v. Cox,* 282 Md. 447, 455, 385 A.2d 1179 (1978); *CAM Constr. Co. v. Beccio,* 92 Md.App. 452, 460, 608 A.2d 1264 (1992)). "An injury arises in the course of employment "when it occurs during the period of employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incident thereto." " *Id.* at 555, 675 A.2d 558 (quoting *Huffman v. Koppers Co.,* 94 Md.App. 180, 185, 616 A.2d 451 (1992) (quoting *Watson v. Grimm,* 200 Md. 461, 466, 90 A.2d 180 (1952))).

▮▮ Ordinarily, an employee that suffers an injury going to or returning from their place of work is not considered to be acting in the course of their employment. *See Director of Finance for the City of Baltimore v. Alford,* 270 Md. 355, 359, 311 A.2d 412 (1973); *Reisinger–Siehler Co. v. Perry,* 165 Md. 191, 194, 167 A. 51 (1933); *Barnes,* 109 Md.App. at 555, 675 A.2d 558; *Fairchild Space Co. v. Baroffio,* 77 Md.App. 494, 497, 551 A.2d 135 (1989); *Coats & Clark's Sales Corp. v. Stewart,* 39 Md.App. 10, 13, 383 A.2d 67 (1978). Appellant acknowledges that he was returning to work, but asserts that the injury is compensable because of: (1) the special mission exception; (2) the dual purpose doctrine exception; and (3) the personal comfort exception.

### I.

▮▮ A special mission occurs when "an employee is acting in the course of employment when traveling on a special mission or errand at the request of the employer and in the furtherance of the employer's business, even if the journey is one that is to or from the workplace." *Barnes,* 109 Md.App.

at 555–56, 675 A.2d 558 (citing *Huffman,* 94 Md.App. at 187, 616 A.2d 451; Richard P. Gilbert & Robert L. Humphreys, Jr., MARYLAND WORKERS' COMPENSATION HAND-BOOK § 6.7–2 at 113 (2nd ed.1993); Elmer H. Blair, BLAIR'S REFERENCE GUIDE TO WORKMEN'S COM-PENSATION LAW § 9:17 at 9–65; 82 Am.Jur.2d *Workers' Compensation* § 301 (1992)). Put another way, "[a] special errand or special mission is a trip undertaken by the employee at the direction or request of an employer for the purpose of helping the employer's business." *Coats & Clark's Sales Corp.,* 39 Md.App. at 13, 383 A.2d 67 (footnote omitted).

The special mission exception was initially recognized in *Reisinger–Siehler Co. v. Perry, supra,* 165 Md. at 191, 167 A. 51. There, the claimant, who was employed by Reisinger–Siehler for fifty-two years, worked from 6:00 a.m. to 6:00 p.m., and was subject to being called at any time to attend to the employer's store. *Id.* at 192–93, 167 A. 51. On June 22, 1932, the claimant returned to the employer's store around 11:00 p.m.—12:00 a.m. to attend to an issue. *Id.* at 193, 167 A. 51. After addressing the issue, the claimant proceeded home and was struck by an automobile. *Id.* The claimant applied to the State Industrial Accident Commission and was awarded compensation. *Id.* Reisinger–Siehler appealed to the Circuit Court for Baltimore City, which affirmed the decision. *Id.* at 193–94, 167 A. 51.

On appeal, the Court of Appeals recognized that when an employee is injured going or coming to work, he or she is excluded from workers' compensation benefits. *Id.* at 194, 167 A. 51. In recognizing there were exceptions to the rule, the Court articulated:

Whether a case falls without the rule depends upon the terms of the agreement by which the claimant is employed. If the agreement of employment is made to cover the time of his going to and returning from his place of work, then the case falls within the exception to the rule. Such an agreement, however, need not be an express agreement. It may be implied from the nature and character of the work and employment. The question, therefore, whether a case

is an exception to the general rule, depends upon its own particular facts.

\* \* \*

The record does not disclose any express agreement between [the claimant] and his employer relative to the duties that he was to perform, or the remuneration he was to receive. Under his regular employment, his duties were to remain at the store during the day; but, in addition to this, he was, as we have said, when at home, subject to further duties when called upon. The times when these duties were to be performed were uncertain, as he was to go to the store only when unusual conditions existed there. What he was to do and the length of time he was to remain there were equally uncertain. It was possible that when called from his home and possibly from his bed, at night, the work he found necessary to be done upon reaching the store would require his presence for but a few minutes, and it could hardly be said that this employment, for which he was to be remunerated, would cover only the period for which he was actually at work in or about the store. The work that he was called upon to do under these circumstances differs greatly from the regular employment of one employed at regular hours at a given place, and who at the expiration of the period of his work is free to serve himself as he pleases.

There was, we think, an implied agreement, from the nature and character of the employment of the claimant in the performance of the additional duties, that his employment was not to be restricted to the time in which he was at work at the store on such occasions. It was in the nature of an errand or mission on behalf of his employer, and when so treated his employment commenced at the time when he left his home to go to the store, and ended when he returned to his home.

*Id.* at 198–99, 167 A. 51.

Appellant asserts that the "Policy on Appropriate Attire and

Appearance" ("the Policy"),[2] which provides that all judiciary employees shall "present an appropriate and professional image at work[,]" in effect, "mandated" that he change his shirt and tie once he spilled coffee on them. Appellant, moreover, contends that he was "vested with express authority and discretion[ ]" to drive home and change because the judiciary depends on the "appropriate discretion" of its employees in interpreting and applying the Policy. In light of appellant's contentions, we note that the special mission exception ordinarily is recognized when an employee is acting in accordance with a specific request from an employer, and that did not occur in the case *sub judice.*

In *Director of Finance for the City of Baltimore v. Alford, supra,* 270 Md. at 356, 311 A.2d 412, the Police Commissioner of Baltimore City issued a five-day alert that provided that police officers, whether on duty or off, needed to be available. The claimant was scheduled to report at 11:30 p.m.; however, around 9:00 p.m., he was notified that he needed to come in as soon as possible. *Id.* at 356–57, 311 A.2d 412. As he drove to the police station, the claimant was struck in the rear of his vehicle. *Id.* at 357, 311 A.2d 412. The Court of Appeals concluded that the special mission exception was applicable because the claimant was on his way to an emergency, he was

---

**2.** The Policy, in relevant part, provides:

I. PURPOSE
The purpose of this policy is to establish guidelines to ensure that all employees of the Maryland Judiciary present an appropriate and professional image at work.

\* \* \*

IV. POLICY STATEMENT
The appearance of Judiciary employees has a direct impact on the public's perception of the Judiciary, and State employees in general. Employees are expected to dress in a businesslike manner, with apparel that appropriately reflects the dignity of the Judiciary and is consistent with a productive atmosphere. The Judiciary relies on the judgment and appropriate discretion of all employees to appropriately interpret and apply this policy, and to exercise good taste in their attire and appearance while working in any Judiciary facility.
The supervisor and/or Administrative Official shall have the discretion to determine whether an employees dress and appearance are appropriate.

obligated to report as soon as possible, and failure to do so could have resulted in discipline. *Id.* at 364, 311 A.2d 412.

In *Coats & Clark's Sales Corp. v. Stewart, supra,* 39 Md. App. at 11, 383 A.2d 67, the decedent and his wife were supposed to attend a dinner party to honor two employees, where the decedent was supposed to present a watch to one of the honored employees. Prior to going to the party, the decedent and his wife intended on picking up groceries because there was no food for the babysitter or their child. *Id.* at 12, 383 A.2d 67. Unfortunately, the decedent and his wife were involved in an accident before arriving at the store. *Id.* at 11–12, 383 A.2d 67. On appeal, we concluded that the trip to the grocery store was a special mission because babysitting services, which presumably involved acquiring food for the babysitter, would not have been necessary had the decedent not been required to attend an employer sponsored party that spouses were expected to attend. *Id.* at 17, 383 A.2d 67.

In the case *sub judice*, nobody instructed appellant that he needed to go home and change his shirt and tie.[3] The Policy, which appellant contends provides express authority to leave the courthouse without authorization, is merely a policy that gives employees guidance on professional attire. The Policy

---

**3.** There are several cases in other jurisdictions in which courts have held that the special mission exception was applicable because the employer instructed the employee to go home and change clothes. *See e.g.'s Sloane Nissan v. Workers' Compensation Appeal Board,* 820 A.2d 925, 927 (Pa.Commw.Ct.2003) (the special mission exception was applicable because an employee was directed to go home and change clothes); *Jennette v. MCS Canon,* 211 A.D.2d 943, 621 N.Y.S.2d 229 (N.Y.App.Div.1995) (the special mission exception was applicable where an employee was instructed that she had to go home and change into more appropriate attire before returning to work); *Powers v. Lady's Funeral Home,* 306 N.C. 728, 295 S.E.2d 473, 475–76 (1982) (the special mission exception was applicable because the employer required the employee to shower and change clothes and there was no shower on the premises); *Heinz v. Concord U. Sch. Dist.,* 117 N.H. 214, 371 A.2d 1161, 1165 (1977) (the special mission exception was applicable where a teacher drove home to change clothes before chaperoning a school dance); *Horvath v. Industrial Commission,* 26 Wis.2d 253, 131 N.W.2d 876, 881–82 (1965) (the special mission exception was applicable because an employee had to go home to change for a banquet she was required to attend).

does not contain a specific mandate that requires employees to leave when they realize that their attire may be inappropriate. Even if an employee's attire is inappropriate and it is necessary for he or she to change, that decision should be made by a supervisor. Moreover, the discretionary portion of the Policy cannot be considered express authority for an employee to leave without authorization. The discretionary element of the Policy appears to have been included so a specific breakdown of appropriate dress for each position was not needed. Thus, we must conclude that the Policy did not provide appellant with express authority to leave the courthouse without securing authorization.

Appellant, relying on *Reisinger–Siehler Co.*, next argues that there was implied authority to leave because there was a liberal policy concerning bailiffs running errands. In *Reisinger–Siehler Co.*, 165 Md. at 198–99, 167 A. 51, the Court of Appeals held that there was an implied agreement that made the special mission exception applicable because of "the nature and character of the employment. . . ." Here, appellant was assigned to courtroom five to ensure the safety of the courtroom. There is nothing in the nature or character of this type of employment that suggests there was an implied policy permitting bailiffs to leave the courthouse without authorization. Moreover, Mr. Colburn and Mr. Johnston indicated that there was no unofficial policy that bailiffs were permitted to leave courtroom five without authorization. Bailiffs may have been running minor errands without authorization, but that does mean a supervising authority approved the practice or acquiesced in these activities. The record, in fact, suggests otherwise.

Our conclusion is further buttressed by the fact that appellant had implied authority to leave the courthouse on "Fish Friday." Every other Friday, according to appellant, he would leave the courthouse to pick up approximately sixteen to twenty orders of fish from Hollins Market. The record suggests that appellant did not seek authorization to leave the courthouse and Mr. Colburn knew that appellant picked up orders every other Friday. Indeed, the knowledge and accep-

tance that appellant drove to Hollins Market every other Friday demonstrates that he had implied authority for that task. Likewise, it indicates that appellant did not have implied authority to drive home and change his shirt and tie because Mr. Colburn did not know about this errand and did not implicitly authorize it. Therefore, despite appellant's good intentions, because appellant did not have express or implied authority to drive home and change, we cannot conclude appellant was on a special mission on behalf of his employer.

## II.

The dual purpose doctrine provides that an injury is compensable if the injury occurs during a trip that serves both a business and personal purpose. *Montgomery County v. Wade,* 345 Md. 1, 13, 690 A.2d 990 (1997); *Stoskin v. Bd. of Ed. of Montgomery County,* 11 Md.App. 355, 358, 274 A.2d 397 (1971). The doctrine generally is applicable when a "trip involves the performance of a service for the employer which would have caused the trip to be taken by someone even if it had not coincided with the personal journey." *Id.* (citation omitted). Appellant contends that his injury is compensable under the dual purpose doctrine because he was advancing the judiciary's interests. Appellant, specifically, asserts that: (1) he had his radio with him so he could monitor communication and return if needed; and (2) the Policy provided that an employee must maintain "a professional and appropriate image...."

*Stoskin* is the leading case on the issue. There, the claimant, a recently hired schoolteacher, was unable to attend a beginning of the year orientation, so the principal provided her with several books to familiarize herself with the courses of study. *Stoskin,* 11 Md.App. at 356, 274 A.2d 397. The next morning, while the claimant was carrying the books, she slipped on "a coca-cola bottle" as she exited the vehicle that dropped her off. *Id.* at 356–57, 274 A.2d 397. The claimant, among other things, argued that her injury was compensable under the dual purpose doctrine because her employer required her to take the books home and familiarize herself with

them. *Id.* at 358, 274 A.2d 397. In rejecting this argument, we held:

> We think it plain that the "dual purpose" doctrine has no application to the facts of this case. At best, the record shows that [the claimant's] employer gave her school books to study and become familiar with before the opening of school the following day, and that [the claimant] was carrying them when she slipped on a coca-cola bottle off the school premises when coming to work. There is no evidence showing any agreement, either express or implied, between [the claimant] and her employer that [the claimant] was undertaking, outside of her regular place of employment, a special assignment for her employer's benefit, commencing from the time she left the school premises with the books and continuing, without interruption, until she returned to the school the following day.

*Id.* at 359, 274 A.2d 397 (internal citations omitted)

The fact that appellant had his radio with him does not demonstrate that there was express or implied authority to leave the courthouse without authorization. Although appellant thought he was providing the courthouse with a service by taking the radio with him, he would not have been able to respond as expected, or presumably needed, had he been called on the radio. Taking the radio may have served a business purpose if Mr. Colburn, or a supervising authority, had authorized appellant to leave on the condition that he took his radio with him. However, that did not occur. Instead, appellant independently decided that taking the radio would be a sufficient alternative to asking Mr. Colburn for authorization to leave the courthouse.[4] Furthermore, as explained *supra,* the Policy does not provide appellant with express or implied authority to leave the courthouse without authorization.

---

**4.** Despite taking the radio, appellant did not contact Mr. Colburn and tell him that he was on his way home to change his shirt and tie. Had appellant contacted Mr. Colburn and received authorization, the trip arguably would have been in the course of his employment.

*Montgomery County v. Wade, supra,* 345 Md. at 6, 690 A.2d 990, is also instructive. There, Montgomery County had a program that provided police officers could maintain a "personal patrol vehicle." The program was established to ensure the "highest level of police service to the community by providing greater police visibility on the streets and in the neighborhoods. . . ." *Id.* (internal quotations and citation omitted). The claimant, who was a member of the program, was involved in an accident as she drove, in her personal patrol vehicle, her grandmother to her mother's house. *Id.* at 5, 690 A.2d 990. The Court of Appeals, among other things, concluded that the dual purpose doctrine was applicable, despite the police officer's personal use of the vehicle, because the vehicle was also used for business purposes. *Id.* at 13–14, 690 A.2d 990. In support, the Court of Appeals noted that the vehicle provided a visual deterrence and it was possible that the officer may have been dispatched at any moment while driving the vehicle. *Id.* at 14, 690 A.2d 990.

The case *sub judice* is distinguishable because the employer in *Wade* knew that the employee was acting in the employer's interests when she drove the personal patrol vehicle. The employer in *Wade,* in fact, specifically authorized employees to drive personal patrol vehicles to further its interests. Here, appellant's actions were not furthering the interests of his employer and the employer did not know about his actions. Appellant may have thought that his attire was inappropriate, but the interests of the courthouse, as indicated above, would have been better served by appellant remaining at the courthouse. Moreover, a supervisor should have decided whether driving home to change a shirt and tie was furthering the interests of the employer. Thus, because appellant was not furthering the interests of his employer, the dual purpose doctrine is not applicable.

### III.

Appellant lastly argues that his injury is compensable under the "personal comfort" exception articulated in *King Waterproofing Co. v. Slovsky,* 71 Md.App. 247, 524 A.2d 1245

(1987). In *Slovsky*, the claimant was a part-time telephone solicitor that worked from 4:00 p.m. to 8:00 p.m., and was provided a paid break. *Id.* at 249, 524 A.2d 1245. One day around 6:30 p.m., which was during the claimant's paid break, he was struck by an automobile as he crossed the street to get food and drink from a restaurant. *Id.* In determining whether the claimant's injury was compensable, we noted that the "going and coming rule" and its exceptions were not applicable. *Id.* at 253, 524 A.2d 1245. Instead, we held that "[t]he better analysis ... is to consider whether the [claimant] sustained his accidental injury while engaged in some personal comfort activity incidental to his employment." *Id.*

Thereafter, we acknowledged that because an injury that occurs during an on-premises coffee break could arise out of the course of employment, "it follows that an injury sustained during an off-premises coffee break also can arise out of employment." *Id.* at 253–54, 524 A.2d 1245. We then noted:

It is clear that one cannot announce an all-purpose "coffee break rule," since there are too many variables that could affect the result. The duration might be five minutes, seven minutes, 10 minutes, or even 20 minutes by which time it is not far from that of a half-hour lunch period. Other variables may involve the question whether the interval is a right fixed by the employment contract, whether it is a paid interval, whether there are restrictions on where the employee can go during the break, and whether the employee's activity during this period constituted a substantial personal deviation.

*Id.* at 254, 524 A.2d 1245 (quoting 1 A. Larson, *Workmen's Compensation Law*, § 15.54, at 4–116.38 to .40 (1985) (footnotes omitted)).

In light of that, we articulated:

Turning to the facts in the instant case, the appellee and his fellow telephone solicitors received a paid 20–minute break under the terms of their employment. The break was intended to benefit both [the claimant], the employer, and its employees inasmuch as the opportunity to take a

brief respite [that] would ostensibly renew the employees' vigor and, of particular importance in the case of telephone solicitors, their voices. Employees generally used the break to attend to their personal comfort, which included the consumption of food and drink. The employer accepted and encouraged this activity by providing on the premises a coffee machine, a refrigerator, and tables for employees to partake of refreshments. Within the confines of the employer's premises, then, the employees were entitled to a break as an incident of their employment. The only question is whether the [claimant] somehow departed from the course of his employment by leaving [the employer's] premises during his break on December 19, 1984.

We conclude that the [claimant] did not leave the course of his employment. At issue is whether the [claimant's] accidental injury occurred at a place where the [claimant] reasonably could have been in attending to his personal comfort during his paid break. Under the circumstances of this case, we think it was reasonable for the [claimant], at the time of his accidental injury, to be going to a carry-out restaurant across the street from his employer's premises. The [employer and insurer] did not contend that the employer prohibited employees from leaving the premises during their breaks. Moreover, the [employer and insurer] conceded that the [the claimant] and [ ] other employees customarily went out to obtain food and drink during those breaks. Even the [the claimant's] supervisor had asked the [claimant] on prior occasions to pick up refreshments. Thus, it is apparent that the employer, while perhaps not encouraging its employees to leave the premises, at least acquiesced in the practice.

*Id.* at 254–55, 524 A.2d 1245.

We believe *Slovsky* suggests that the personal comfort exception is applicable where the terms of employment provide a paid break in which an employer can attend to his or her personal comforts, and where an employer encourages a break that benefits the employer and the employee. The record does not suggest that the terms of appellant's part-time

employment entitled him to a paid break in which he could attend to his personal comforts. Nevertheless, appellant suggests that the "personal comfort" exception applies to the case *sub judice* because bailiffs would be compensated while they conducted personal errands that would take less than forty minutes. However, as noted *supra*, appellant's supervisor did not encourage or implicitly accept the fact that bailiffs conducted unauthorized errands in which appellant and the other bailiffs would attend to their personal comforts. Notwithstanding, any benefit derived from appellant's errand was not the mutual benefit envisioned by *Slovsky*. Moreover, it was not reasonable to assume appellant's employer could have known he was attending to a personal comfort at his house. Thus, we must conclude that the personal comfort exception does not make appellant's injury compensable.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**