**WORKERS' COMPENSATION - GOING AND COMING RULE**

The going and coming rule, which generally precludes an award of workers' compensation to an employee traveling to and from work, is not applicable when an employee is traveling from one site, where he was engaged in employer-encouraged activities, to another site, where he was to engage in a work-related task, to which his employer acquiesced.

Circuit Court for Montgomery County
Case No. #345839
Argued 12/10/13

THADDUS ROBERTS

v.

MONTGOMERY COUNTY,
MARYLAND

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Battaglia, J.

Filed: January 28, 2014

The present case presents itself in the Workers' Compensation context, as Thaddus

Roberts, Petitioner, a paid firefighter employed by Montgomery County, Respondent, filed

a claim pursuant to the Maryland Workers' Compensation Act,[1] alleging that he was injured

---

[1] Section 9-709 of the Labor and Employment Article, Maryland Code (1991, 2008 Repl. Vol.), provides:

> (a) *Filing claim — In general; authorization for release of relevant medical information.* — (1) Except as provided in subsection (c) of this section, if a covered employee suffers an accidental personal injury, the covered employee, within 60 days after the date of the accidental personal injury, shall file with the Commission:
> (i) a claim application form; and
> (ii) if the covered employee was attended by a physician chosen by the covered employee, the report of the physician.
> (2)(i) A claim application form filed under paragraph (1) of this subsection shall include an authorization by the claimant for the release, to the claimant's attorney, the claimant's employer, and the insurer of the claimant's employer, or an agent of the claimant's attorney, the claimant's employer, or the insurer of the claimant's employer, of medical information that is relevant to:
> 1. the member of the body that was injured, as indicated on the claim application form; and
> 2. the description of how the accidental personal injury occurred, as indicated on the claim application form.
> (ii) An authorization under subparagraph (i) of this paragraph:
> 1. includes the release of information relating to the history, findings, office and patient charts, files, examination and progress notes, and physical evidence;
> 2. is effective for 1 year from the date the claim is filed; and
> 3. does not restrict the redisclosure of medical information or written material relating to the authorization to a medical manager, health care professional, or certified rehabilitation practitioner.
> (b) *Failure to file claim.* — (1) Unless excused by the

(continued...)

in an accident that occurred when he was leaving the Washington Capital Beltway on his

motorcycle, on his way from physical training at Friendly High School, located in Fort

Washington, to Fire Station 19, in Silver Spring.

---

(...continued)

Commission under paragraph (2) of this subsection, failure to file a claim in accordance with subsection (a) of this section bars a claim under this title.

(2) The Commission may excuse a failure to file a claim in accordance with subsection (a) of this section if the Commission finds:

(i) that the employer or its insurer has not been prejudiced by the failure to file the claim; or

(ii) another sufficient reason.

(3) Notwithstanding paragraphs (1) and (2) of this subsection, if a covered employee fails to file a claim within 2 years after the date of the accidental personal injury, the claim is completely barred.

(c) *Filing claim — Ionizing radiation. —* If a covered employee is disabled due to an accidental personal injury from ionizing radiation, the covered employee shall file a claim with the Commission within 2 years after:

(1) the date of disablement; or

(2) the date when the covered employee first knew that the disablement was due to ionizing radiation.

(d) *Estoppel or fraud. —* (1) If it is established that a failure to file a claim in accordance with this section was caused by fraud or by facts and circumstances amounting to an estoppel, the covered employee shall file a claim with the Commission within 1 year after:

(i) the date of the discovery of the fraud; or

(ii) the date when the facts and circumstances that amount to estoppel ceased to operate.

(2) Failure to file a claim in accordance with paragraph (1) of this subsection bars a claim under this title.

All statutory references throughout are to Maryland Code (1991, 2008 Repl. Vol.), unless otherwise noted.

The operative facts are largely undisputed[2] and are derived from Mr. Roberts's affidavit filed in support of his Motion for Summary Judgment in the Circuit Court for Montgomery County, as well as his testimony before the Maryland Workers' Compensation Commission ("Commission"). Mr. Roberts, at the time of his injury, was working in a "light duty"[3] position with the Fire Department, due to problems related to a prior compensable back injury and was assigned to Fire Department Headquarters, located in Rockville, as opposed to his "regular duty" station, which was Fire Station 19. While on light duty, Mr. Roberts worked four ten-hour shifts per week, starting at 7 a.m. and ending at 5 p.m. Mr. Roberts, as with other firefighters including those on light duty, were encouraged by the Fire Department to engage in two hours of physical training per shift, was paid during those two hours, and could physically train at any location of his choice.

While Mr. Roberts was on light duty, approximately once per month, he would "stop

---

[2] In its brief and during the course of oral argument before us, Montgomery County interposed the notion that Mr. Roberts did not have permission to visit Fire Station 19 and that Mr. Roberts was engaged in a "frolic" or "detour" at the time of his injury. In so doing, the County is apparently invoking notions reflected in *Atlantic Refining Co. v. Forrester*, 180 Md. 517, 25 A.2d 667 (1942) and *Garrity v. Injured Workers' Insurance Fund*, 203 Md. App. 285, 37 A.3d 1053 (2012), where compensation was denied. The County, though, had not raised the issues of permission or "frolic and detour" below so we do not consider the issues.

[3] A firefighter is placed on "light duty," when he or she cannot "physically perform the tasks of his job or meet the demands of working as a firefighter" and is assigned to "performing less physically strenuous tasks." *See Montgomery County v. Deibler*, 423 Md. 54, 58, 31 A.3d 191, 193 (2011).

by" Fire Station 19 to pick up his "work mail,"[4] left for him at that location, "which included things such as interoffice memos and letters from Montgomery County's Department of Human Resources," and was a practice observed by firefighters on light duty, about which Mr. Roberts's supervisors were aware.[5] On the day of Mr. Roberts's accident and resulting injury, he arrived at Friendly High School around 7 a.m. and trained until 8:30 a.m., at which time he left and traveled to gather the mail at Fire Station 19. En route, at approximately 9:15 a.m., Mr. Roberts was involved in the accident that is the genesis of the instant case.[6]

---

[4] Mr. Roberts testified before the Commission that he traveled to Fire Station 19 to check to see if he had any "office mail." In the affidavit attached to his Motion for Summary Judgment filed in the Circuit Court for Montgomery County, Mr. Roberts averred that he was traveling to Fire Station 19 to pick up his "work mail, which included things such as interoffice memos and letters from Montgomery County's Department of Human Resources."

[5] During the hearing before the Commission, the following colloquy occurred:

> [MR. ROBERTS'S ATTORNEY]: How often would you go to the station before you would go to light duty?
> [MR. ROBERTS]: About every month or so.
> [MR. ROBERTS'S ATTORNEY]: What's the specific reason you would need to stop at the station?
> [MR. ROBERTS]: To go by there and check and see if I had any office mail or anything.
> [MR. ROBERTS'S ATTORNEY]: So mail that's directed to you would go to a slot or a box at the station?
> [MR. ROBERTS]: Yes, my officer would put it in my box.

In his Summary Judgment affidavit, Mr. Roberts stated: "Approximately once a month, while I was on light duty, I would stop by my fire station to pick up my work mail. . . . I received no personal mail at the fire station. Other fire fighters on light duty would also do this and my supervisors were aware of the practice."

[6] Mr. Roberts's Summary Judgment affidavit in its totality, stated:

(continued...)

4

Montgomery County contested Mr. Roberts's claim at the Commission,[7] alleging that

(...continued)

1. I have been a paid career Montgomery County firefighter since 1986.

2. On October 28, 2010, I was working in a "light duty" position with the Montgomery County Department of Fire and Rescue Services, due to problems related to my 2004 compensable back injury at work.

3. At the time of my injury on October 28, 2010 my schedule consisted of four 10-hour shifts per week, beginning at 7 a.m. and ending at 5 p.m. On October 28, 2010, my shift, and my pay for the day, began at 7 a.m.

4. All fire fighters, including those on "light duty," are encouraged by their supervisors and allowed to do two hours of physical training during their 10-hour shifts. This physical training can be done at any place of the fire fighter's choosing. The amount of physical training a fire fighter does is significant on the fire fighter's yearly performance appraisal.

5. On October 28, 2010, I went to Friendly High School to use the school's track to walk laps for physical training. I arrived there shortly before 7 a.m., when my shift started and my pay for the day began.

6. Approximately once a month, while I was on light duty, I would stop by my fire station to pick up my work mail, which included things such as interoffice memos and letters from Montgomery County's Department of Human Resources. I received no personal mail at the fire station. Other fire fighters on light duty would also do this and my supervisors were aware of the practice.

7. On October 28, 2010, I walked approximately 10 laps around the track, and then left Friendly High School at approximately 8:30 a.m. I then left the school on my way to my station to pick up my work mail. I was riding my motorcycle. Traffic was very heavy that day and so instead of taking the Georgia Avenue exit to get to my station, I took the exit before that, Colesville Road, to get off the congested highway. Shortly after I exited the Capital Beltway onto Colesville Road, I lost control of my motorcycle and crashed.

Mr. Roberts's injury did not arise out of or in the course of his employment, among other

[7] Section 9-713 of the Labor and Employment Article, provides:

(a) *Payment or filing within 21 days.* — Except as provided in subsection (c) of this section, within 21 days of the mailing of the notice of the filing of a claim, the employer or its insurer shall:
(1) begin paying temporary total disability benefits; or
(2) file with the Commission any issue to contest the claim.
(b) *Failure to pay or file within 21 days — Penalties.* — If the Commission finds that an employer or insurer has failed, without good cause, to begin paying temporary total disability benefits or to file issues contesting a claim within 21 days of the mailing of the notice of the filing of a claim, the Commission may assess against the employer or insurer a fine not exceeding 20% of the amount of the payment.
(c) *Payment or filing within 30 days.* — If the employer or its insurer does not begin paying benefits or file issues within 21 days under subsection (a) of this section, within 30 days of the mailing of the notice of the filing of a claim, the employer or its insurer shall:
(1) begin paying temporary total disability benefits; or
(2) file with the Commission any issue to contest the claim.
(d) *Failure to pay or file within 30 days — Penalties.* — If the Commission finds that an employer or insurer has failed, without good cause, to begin paying temporary total disability benefits or to file issues contesting a claim within 30 days of the mailing of the notice of the filing of a claim, the Commission may assess against the employer or insurer a fine not exceeding 40% of the payment.
(e) *Payment to covered employee.* — The Commission shall order the employer or insurer to pay a fine assessed under this section to the covered employee.
(f) *Payment of benefits not waiver.* — Subject to § 9-714 of this subtitle, payment by an employer or its insurer before an award does not waive the right of the employer or its insurer to contest the claim.

issues not before us.[8]  The Commission, after a hearing,[9] disallowed Mr. Roberts's claim in an order, which, in relevant part, provided:

> The Commission finds on the first issue that the claimant did not sustain an accidental injury arising out of and in the course of employment as alleged to have occurred on October 28, 2010.  Therefore, the remaining issues are not applicable, and the Commission will disallow the claim filed herein.

Mr. Roberts then filed a "Petition for Judicial Review," as well as a "Request for Jury Trial,"[10] in the Circuit Court for Montgomery County and, thereafter, a Motion for Summary

_____

[8]  In the form filed contesting Mr. Roberts's claim, Montgomery County indicated that it would be raising issues, in addition to the claim that Mr. Roberts's accidental injury did not arise out of and in the course of his employment.  The "other" issues raised at the hearing before the Commission were "notice" and "[t]emporary total disability."  These "other" issues are not before us.

[9]  Section 9-714 of the Labor and Employment Article, provides:

> (a) *Investigation; hearing.* — When the Commission receives a claim, the Commission:
> (1) may investigate the claim; and
> (2) on application of any party to the claim, shall order a hearing.
> (b) *Determination.* — (1) The Commission shall make or deny an award within 30 days:
> (i) after the mailing of the notice of the filing of a claim; or
> (ii) if a hearing is held, after the hearing is concluded.
> (2) The decision shall be recorded in the principal office of the Commission, and a copy of the decision shall be sent by first-class mail to each party's attorney of record or, if the party is unrepresented, to the party.

[10]  Section 9-745 of the Labor and Employment Article, provides:

> (a) *In general.* — The proceedings in an appeal shall:

(continued...)

7

Judgment. The County responded and denied liability, as well as filed an Opposition to Claimant's Motion for Summary Judgment and a Cross-Motion for Summary Judgment, in which it alleged that Mr. Roberts's injury did not arise out of and in the course of his employment, because he was "going and coming" to work at the time of his injury: "He was not traveling between two sections of the Employer's premises, nor was he injured in an employer-provided parking lot. He was simply on his way to work, driving his own

---

(...continued)

       (1) be informal and summary; and
       (2) provide each party a full opportunity to be heard.
       (b) *Presumption and burden of proof.* — In each court proceeding under this title:
       (1) the decision of the Commission is presumed to be prima facie correct; and
       (2) the party challenging the decision has the burden of proof.
       (c) *Determination by court.* — The court shall determine whether the Commission:
       (1) justly considered all of the facts about the accidental personal injury, occupational disease, or compensable hernia;
       (2) exceeded the powers granted to it under this title; or
       (3) misconstrued the law and facts applicable in the case decided.
       (d) *Request for jury trial.* — On a motion of any party filed with the clerk of the court in accordance with the practice in civil cases, the court shall submit to a jury any question of fact involved in the case.
       (e) *Disposition.* — (1) If the court determines that the Commission acted within its powers and correctly construed the law and facts, the court shall confirm the decision of the Commission.
       (2) If the court determines that the Commission did not act within its powers or did not correctly construe the law and facts, the court shall reverse or modify the decision or remand the case to the Commission for further proceedings.

8

motorcycle. None of the exceptions set forth in [*Board of County Commissioners for Frederick County v. Vache*, 349 Md. 526, 709 A.2d 155 (1998)[11]] apply, and his claim is barred by the going and coming rule." Mr. Roberts countered that his injury was compensable, because "but for" his "work-related duties of physical training and receiving

---

[11] In *Vache*, 349 Md. at 532, 709 A.2d at 158, four exceptions to the "going and coming" rule were enumerated:

> Onto this general rule, however, the courts have engrafted several exceptions when compensation benefits may properly be granted. [1.] Thus, where the employer furnishes the employee free transportation to and from work, the employee is deemed to be on duty, and an injury sustained by the employee during such transportation arises out of and in the course of employment. *Tavel v. Bechtel Corporation,* 242 Md. 299, 304, 219 A.2d 43 (1966); *Rumple v. Henry H. Meyer Co., Inc.,* 208 Md. 350, 357, 118 A.2d 486 (1955). [2.] Compensation may also be properly awarded where the employee is injured while traveling along or across a public road between two portions of the employer's premises. *Wiley Mfg.,* 280 Md. at 206, 373 A.2d 613; *Procter[Proctor]-Silex v. DeBrick,* 253 Md. 477, 482, 252 A.2d 800 (1969). [3.] The "proximity" exception allows compensation for an injury sustained off-premises, but while the employee is exposed to a peculiar or abnormal degree to a danger which is annexed as a risk incident to the employment. *Pariser Bakery v. Koontz,* 239 Md. 586, 591, 212 A.2d 324 (1965); *see Md. Paper Products Co. v. Judson,* 215 Md. 577, 584-588, 139 A.2d 219 (1958). [4.] Injuries incurred while the employee travels to or from work in performing a special mission or errand for the employer are likewise compensable. *Reisinger-Siehler Co. v. Perry,* 165 Md. 191, 199, 167 A. 51 (1933); *see Dir. of Finance v. Alford,* 270 Md. 355, 359-364, 311 A.2d 412 (1973).

*Id.* at 532, 709 A.2d at 158 (alterations in original), quoting *Alitalia Linee Aeree Italiane v. Tornillo*, 329 Md. 40, 44, 617 A.2d 572, 574 (1993).

his work mail, he would not have been travelling [sic] between Friendly High School and Station 19," and he was in a place he could reasonably be expected to be in going from one "work-related duty" of physical training, to another, checking his work mail, which was "acquiesced to by Mr. Roberts's supervisors." The Circuit Court granted the County's Cross-Motion for Summary Judgment denying Mr. Roberts's claim, ruling orally and later in writing that Mr. Roberts was not entitled to workers' compensation, because the injury occurred while "he was coming and going" to work.

Mr. Roberts noted an appeal to the Court of Special Appeals, of which a panel, in an unreported opinion, affirmed the decision of the Circuit Court, over a dissent by Judge Albert Matricciani. The majority of the three-judge panel of the Court of Special Appeals agreed with the County and determined that Mr. Roberts was only "at work" when he was at Headquarters, so that his injury was not compensable, because he was going to work at the time of his accident:

> Although Roberts's schedule on October 28, 2010, consisted of four 10-hour shifts per week, beginning at 7 a.m. and ending at 5 p.m., and his pay for the day began at 7 a.m., he did not report to work at the Rockville headquarters because he "never made it." We deduce from this evidence that although Roberts was paid for ten hours per day, he was "at work" only when he was at the Rockville Headquarters.

The majority, moreover, reasoned:

> Although Roberts and his co-workers check their mail periodically and their supervisors "were aware of the practice," neither party provided evidence to show that checking work-related mail was an official part of the employees' work duties

10

rather than waiting until it was forwarded to their place of assignment. Thus, we presume that employees were permitted to check their mail on their own time and at their own risk.

In addition, in this case, Roberts was injured while on his way to Station 19 to pick up his office mail. There may have been a different outcome if Roberts had been injured while picking up his mail at Station 19.

Judge Matricciani, however, was "unpersuaded that Roberts was 'at work' only when present at the Rockville Headquarters, as the majority indicates . . . . His work day began at 7 a.m. and continued to 5 p.m.," and further opined:

Reasonable minds can differ as to whether appellant was "going" to work when he was injured. In my judgment, he would not have been injured "but for" his efforts to keep abreast of his work obligations and, thus, the "positional risk" test favors him under these circumstances. *Montgomery Cnty. v. Wade*, 345 Md. 1, 9-10 (1997) ("An injury is said to 'arise out of' one's employment when it results from some obligation, condition, or incident of the employment."); *see also Livering v. Richardson's Rest.*, 374 Md. 566, 575 (2003) ("The positional-risk test is essentially a 'but for' test").

We granted certiorari, *Roberts v. Montgomery County*, 431 Md. 444, 66 A.3d 47 (2013), to consider the following questions:[12]

1. A compensable workers' compensation injury is one that occurs in a place the employee would not have been "but for" his employment and while engaged in an activity incident to his employment. Mr. Roberts was involved in a car accident while he was already on duty, being paid, and traveling between his employer-encouraged physical training session and the firehouse where he worked. Did the majority in the Court of Special

---

[12] Because of our disposition of the first two questions, we need not and will not address the third.

11

Appeals err in upholding the denial of workers' compensation to Mr. Roberts?

2. The "going and coming" rule bars workers' compensation benefits for injuries that occur while an employee is on his way to or from his job at the beginning or end of the day, or for a lunch period. Mr. Roberts was involved in a car accident while he was already on duty, being paid, and traveling between his employer-encouraged physical training session and the firehouse where he worked. Did the majority in the Court of Special Appeals err in holding that the "going and coming" rule bars Mr. Roberts' entitlement to workers' compensation benefits?

3. Did the majority in the Court of Special Appeals below err in upholding the denial of workers' compensation to Mr. Roberts, where its decision was premised on facts not contained in the record?

In considering these questions, we must determine whether, as a matter of law, Mr. Roberts sustained a "compensable injury."[13] We will hold he did and explain.

The Workers' Compensation Act, located at Sections 9-101 through 9-1201 of the Labor and Employment Article, was intended "'to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment.'" *Johnson v. Mayor & City Council of Baltimore*, 430 Md. 368, 377, 61 A.3d 33, 38 (2013), quoting *Montgomery County v. Deibler*, 423 Md. 54, 61, 31 A.3d 191, 195 (2011), quoting in turn *Howard County Assoc. for Retarded Citizens, Inc. v. Walls*, 288 Md.

---

[13] A "compensable injury," for workers' compensation purposes, is defined as an injury "for which the employee is statutorily entitled to receive compensation." Black's Law Dictionary 856 (9th ed. 2009).

526, 531, 418 A.2d 1210, 1214 (1980). The Act is remedial in nature and must be interpreted as such, "'in order to effectuate its benevolent purposes.'" *Deibler*, 423 Md. at 61, 31 A.3d at 195, quoting *Design Kitchen & Baths v. Lagos*, 388 Md. 718, 724, 882 A.2d 817, 821 (2005), quoting in turn *Harris v. Board of Education of Howard County*, 375 Md. 21, 57, 825 A.2d 365, 387 (2003); *see* Section 9-102(a) of the Labor and Employment Article ("This title shall be construed to carry out its general purpose.").

Section 9-501(a) of the Labor and Employment Article, in pertinent part, provides that "each employer of a covered employee shall provide compensation in accordance with this title to . . . the covered employee for an accidental personal injury sustained by the covered employee".[14] Accidental personal injury is defined in Section 9-101(b)(1) of the Labor and Employment Article as that which "arises out of and in the course of employment".

---

[14] Section 9-501 of the Labor and Employment Article, provides:

> (a) *In general.* — Except as otherwise provided, each employer of a covered employee shall provide compensation in accordance with this title to:
> (1) the covered employee for an accidental personal injury sustained by the covered employee; or
> (2) the dependents of the covered employee for death of the covered employee:
> (i) resulting from an accidental personal injury sustained by the covered employee; and
> (ii) occurring within 7 years after the date of the accidental personal injury.
> (b) *Employer liable regardless of fault.* — An employer is liable to provide compensation in accordance with subsection (a) of this section, regardless of fault as to a cause of the accidental personal injury.

13

"Arises out of" relates to the causal connection between the employment and the injury. *Livering v. Richardson's Restaurant*, 374 Md. 566, 574, 823 A.2d 687, 692 (2003). "In the course of" refers to the "time, place, and circumstances of the accident in relation to the employment." *Montgomery County v. Wade*, 345 Md. 1, 11, 690 A.2d 990, 995 (1997).

Under the "positional-risk" test, as adopted in *Mulready v. University Research Corp.*, 360 Md. 51, 66, 756 A.2d 575, 583 (2000) and refined in *Livering,* 374 Md. at 575, 823 A.2d at 692-93, the inquiry is whether the injury would have been sustained, "but for" the fact that the conditions and obligations of employment placed the employee where the injury occurred:

> The positional-risk test is essentially a "but for" test. Professor Larson succinctly states the test as follows: "An injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed [the employee] in the position where he [or she] was injured." A. Larson, *Workers' Compensation Law* § 3.05 (2002); *see also* J.D. Ingram*, The Meaning of "Arising Out of" Employment in Illinois Workers' Compensation Law*, 29 J. Marshall L.Rev. 153, 158 (1995) (noting that under the positional-risk test "an injury is compensable if it would not have happened 'but for' the fact that the conditions or obligations of the employment put the claimant in the position where he was injured").

*Livering*, 374 Md. at 575, 823 A.2d at 692 (alterations and emphasis in original).

The positional-risk test is adduced generally in the situation where an employee is injured while engaging in activities incidental to employment. *See* 2 Modern Workers Compensation § 114:10 (1993) ("If the injury does not have an inherent connection with the employment, the positional risk or but for test is applied to determine whether a sufficient

14

nexus exists between the injury and the employment such that the injury is deemed to have arisen out of the employment." (footnote omitted)).

In *Mulready*, for example, we concluded that an allegation of injury to a traveling employee caused by a slip and fall in a hotel bathroom while attending a seminar in Canada, at the behest of her employer, arose out of her employment, because "but for" the travel required by her employer she would not have been injured. In *Livering*, the positional-risk test covered the situation in which an employee, enjoying a day off, visited the restaurant at which she was employed and was injured after checking her work schedule, because she "would not have been injured but for the fact that she visited the restaurant to confirm her schedule." *Livering*, 374 Md. at 580, 823 A.2d at 695.

In the present case, Mr. Roberts argues that "but for" his participation in employer-encouraged physical exercise at Friendly High School and gathering up his work mail at Fire Station 19, with the employer's acquiescence, he would not have been traveling between the two sites when he was injured. The County, however, disagrees and posits that the going and coming rule defeats compensability, because Mr. Roberts was not at his work site until he reached Headquarters, even though, it concedes that any injury sustained during physical training at Friendly High School would have been covered by the Workers' Compensation Act, equating those premises to a work site.

The going and coming rule provides that injuries sustained by employees commuting to and from a fixed site of employment, "are generally not considered to arise out of and in

15

the course of employment and are, therefore, not compensable under the Act." *Morris v. Board of Education of Prince George's County*, 339 Md. 374, 379, 663 A.2d 578, 582 (1995), citing *Alitalia*, 329 Md. at 44, 617 A.2d at 573-74; *see Salomon v. State*, 250 Md. 150, 154, 242 A.2d 126, 129 (1968) (claimant "was simply going to her place of employment"); *Tavel v. Bechtel Corp.*, 242 Md. 299, 301, 219 A.2d 43, 44 (1966) (claimant "injured on a public highway while driving in his own car from his home to his place of employment"). The rule is premised on the idea that compensation in such situations is not warranted, because "'getting to work is considered to be an employee's own responsibility and ordinarily does not involve advancing the employer's interests.'" *Board of County Commissioners for Frederick County v. Vache*, 349 Md. 526, 531-32, 709 A.2d 155, 158 (1998), quoting *Morris*, 339 Md. at 380, 663 A.2d at 580, citing in turn *Oaks v. Connors*, 339 Md. 24, 660 A.2d 423 (1995).

The rub, then, is whether the positional risk test holds sway or the going and coming rule does. Although the County concedes that Mr. Roberts had been at Friendly High School for a work-related purpose, because he was engaging in physical training encouraged by the County, it asserts Fire Station 19 was not a work-related site; the work site it adopts, for the purposes of the going and coming rule, is Headquarters.

We disagree with the County's assertion that Fire Station 19 was not a work-related site to which Mr. Roberts was traveling, because the mail he was picking up was that left for him at the site and the practice of gathering the mail was one about which his supervisors

16

were aware. As a result, the County "acquiesced" in Mr. Roberts's act of gathering the mail at Fire Station 19. *See Livering*, 374 Md. at 580, 823 A.2d at 695. Acquiescence, we have noted, is to "'give an implied consent . . . to any act, by one's mere silence, or without express assent or acknowledgment.'" *Osztreicher v. Juanteguy*, 338 Md. 528, 534, 659 A.2d 1278, 1281 (1995), quoting Black's Law Dictionary 22 (5th ed. 1979).

Mr. Roberts, thus, was en route from a work-related activity to a site where he was to engage in a work-related act, to which the employer acquiesced. His travel, therefore, was incidental to his employment. Travel incidental to employment cannot be excluded from coverage by application of the going and coming rule.[15] As a result, the injury he sustained is covered by the Workers' Compensation Act, because "but for" his travel between work-related sites he would not have been injured.

In our analysis, we find succor in opinions of our sister states, such as *Jones v. Xtreme Pizza*, 245 S.W.3d 670, 673-74 (Ark Ct. App. 2006) ("In the simplest terms, the going-and-coming rule does not preclude an award of benefits here because this is not a going-and-coming case. . . . Instead, Jones was where he was when the accident happened due to his employment-related activities." (citing *Moncus v. Billingsley Logging & American Insurance Co.*, 235 S.W.3d 877 (Ark. 2006)); *Dade County School Board v. Polite*, 495 So.2d 795, 797

_____

[15] Montgomery County, in this regard, argues that Mr. Roberts's injuries are not compensable under our decisions in *Vache*, 349 Md. at 532, 709 A.2d at 158 and *Montgomery County v. Wade*, 345 Md. 1, 690 A.2d 990 (1997), in which we explored exceptions to the going and coming rule articulated in footnote 11, *supra*. Neither case is applicable in the present case, because the going and coming rule does not apply.

17

(Fl. Ct. App. 1986) (Physical education teacher's injuries deemed compensable when sustained while traveling from a school-sponsored track meet, which she was encouraged to attend, to her home school, because she "was not off-duty away from the employer's premises at the time of the accident but en route between premises to perform her final duty of the day." (internal quotation marks omitted)); *Caterpillar Tractor Co. v. Shook*, 313 N.W.2d 503, 507 (Iowa 1981) ("Caterpillar claims . . . that compensation should be denied under the 'going and coming' rule. Under the going and coming rule, compensation is generally denied to an employee who is injured off the employer's premises while going to and from work. . . . The present situation is different. Shook was being paid by Caterpillar for his time en route to the negotiations. His travel was incidental to his duties. The time, place and activity were work-connected." (citing *Frost v. S.S. Kresge Co.*, 299 N.W.2d 646, 648 (Iowa 1980)); *Spurgeon v. Blue Diamond Coal Co.*, 469 S.W.2d 550, 553 (Ky. 1971) ("Careful analysis of the various decisions in which the 'going and coming' rule has been considered discloses that an employee's injuries sustained as the result of exposure to risks of the streets or highways are covered by the compensation act if the exposure to the hazards was the result of his work or if his employment was the reason for his presence at the place of danger."); *Denny's Restaurant v. Workmen's Compensation Appeal Board*, 597 A.2d 1241, 1244 (Pa. Cmwlth. Ct. 1991) (Employee injured en route between two restaurants owned by the same employer was entitled to workers' compensation, where he reported to one restaurant after being called in by the employer and was told upon arrival to report to

18

another restaurant, although the court recognized that any injury that might have occurred if he reported directly from home to the second restaurant "would be covered by the going-and-coming rule and would not have been compensable."); *Toolin v. Aquidneck Island Medical Resource,* 668 A.2d 639, 641 (R.I. 1995) ("[W]e find a nexus between Toolin's injuries and her employment and therefore find that the going-and-coming rule does not operate to preclude compensation in the instant case.").

Accordingly, we conclude that Mr. Roberts's injury arose out of and in the course of his employment and is covered by the Workers' Compensation Act.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT WITH INSTRUCTIONS TO VACATE THE DECISION OF THE WORKERS' COMPENSATION COMMISSION AND REMAND THE CASE TO THE COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.**

19